[Cite as *State v. Mima*, 2011-Ohio-3798.]

STATE OF OHIO            )               IN THE COURT OF APPEALS
                        )ss:            NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT        )

STATE OF OHIO                           C.A. No.      25540

        Appellee

        v.                              APPEAL FROM JUDGMENT
                                        ENTERED IN THE
NICHOLAS D. MIMA                        COURT OF COMMON PLEAS
                                        COUNTY OF SUMMIT, OHIO
        Appellant                       CASE No.     CR 10 01 0091 (B)

DECISION AND JOURNAL ENTRY

Dated: August 3, 2011

DICKINSON, Judge.

## INTRODUCTION

{¶1}    While James Kathan was working alone at Jim's Glass Company, two men attacked and robbed him. A jury convicted one of the alleged attackers, Nicholas Mima, of aggravated robbery and felonious assault, both with firearm specifications. Mr. Mima has appealed. We affirm the trial court's judgment because the convictions are supported by sufficient evidence and are not against the manifest weight of the evidence.

## BACKGROUND

{¶2}    James Kathan, the owner of Jim's Glass Company, was working in his shop when two men wearing masks that covered their nose and mouth entered the store. According to Mr. Kathan, one of the men approached him, pointed a gun directly at his face, and demanded money. The other man grabbed Mr. Kathan from behind and held his arms behind his back. When Mr. Kathan said he did not have any money, both men started beating him, mainly on his

head. According to Mr. Kathan, the first man beat him with the gun and the other man beat him with his fists.

{¶3}   Once the men stopped beating him, they demanded that he open his safe. He did and again said that he had no money. He told the men that the money was upstairs with his landlord. According to Mr. Kathan, the men then marched him upstairs at gun- and knife-point to the landlord's apartment. When no one answered the door, they pushed it open, entered, and proceeded to take items from the apartment. Afterwards, they marched Mr. Kathan back down the stairs, pushed him through the back door, closed the door behind him, and left.

{¶4}   As the men left Jim's Glass Company, Kelly Prior and two other people were outside delivering telephone books. Ms. Prior testified that she saw the two men running out of Jim's Glass Company and heading toward a black Impala parked behind her vehicle. According to her, one of the men was holding a gun as he was running. She called 911 and reported the license plate number of the Impala as it drove past her.

{¶5}   Mr. Kathan told Lieutenant Brian Jamison of the Akron Police Department that he recognized one of the men who had attacked him as Christopher Hubbard. The license plate number that Mrs. Prior gave the 911 operator was registered to a man named Rod Colbert, Mr. Mima's stepfather. Lieutenant Jamison called Rod Colbert's telephone number, and Kelly Colbert answered. She said that Mr. Colbert was not available, but gave Lieutenant Jamison the telephone number of her son, Nicholas Mima. Later, when Detective Mitchell of the Barberton Police Department came to Mrs. Colbert's house to ask questions about her son, she told him that, although the car was registered to Mr. Colbert, it actually belonged to her son.

{¶6}   Lieutenant Jamison called the number Mrs. Colbert gave him and spoke to Mr. Mima. Lieutenant Jamison asked what kind of car he drove and where he was. Mr. Mima said

he drove an Impala, claimed he had been at work, and stated that no one else had been driving his car. When Lieutenant Jamison told Mr. Mima that he was asking about his car because it had been involved in a robbery, Mr. Mima claimed that his license plates must have been stolen.

{¶7} Shortly after their first conversation, Lieutenant Jamison received a telephone call from Mr. Mima telling him that he was at AutoZone waiting for Akron police to come so he could report his stolen plates. Lieutenant Jamison asked detectives Mitchell and Davis to go and meet Mr. Mima and the police. The car that Mr. Mima claimed the plates had been stolen from was a black Impala. When the detectives arrived, the Impala did not have plates on it. The police refused to make a report regarding the missing plates because they did not believe Mr. Mima's story. Mr. Mima's Impala was towed and held for processing.

{¶8} During their first conversation, Lieutenant Jamison asked Mr. Mima whether he knew anyone named Chris, and Mr. Mima said that he had a friend named Chris Hubbard. When Detective Antenucci arrested Mr. Mima about a week later, Mr. Mima stated that Mr. Hubbard was a dangerous man who owned a gun. He also agreed to help the police find Mr. Hubbard because Mr. Hubbard had gotten him in trouble before and he did not want that to happen again.

{¶9} About four hours after the robbery, Mr. Kathan and Ms. Prior were called to the station to look through photo lineups that Lieutenant Jamison had prepared. One lineup included a photo of Mr. Hubbard, and the other included a photo of Mr. Mima. Mr. Kathan identified Mr. Hubbard from the first set of photos, but did not identify anyone from the second set. Mrs. Prior identified Mr. Hubbard from the first set and Nicholas Mima from the second set. According to Ms. Prior, she was certain that Mr. Hubbard was one of the men from the robbery and eighty percent certain that Mr. Mima was the other. At trial, Ms. Prior said that her certainty about Mr. Hubbard probably had to do with the fact that he had pulled down his mask as he was running to

the car, but Mr. Mima had remained masked. Ms. Prior also testified that the reason she did not claim she was certain about Mr. Mima's identity was because she did not want to get the wrong man in trouble in case she was mistaken.

## SUFFICIENCY AND MANIFEST WEIGHT

{¶10} A jury convicted Mr. Mima of aggravated robbery under Section 2911.01(A)(1) and (3) of the Ohio Revised Code and felonious assault under Section 2903.11(A)(1) and (2), both with firearm specifications under Section 2941.14.5. Under Section 2911.01(A)(1) and (3), "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code . . . shall . . . . [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it . . . [or] [i]nflict, or attempted to inflict serous physical harm on another." Under Section 2903.11(A)(1) and (2), "[n]o person shall knowingly . . . [c]ause serious physical harm to another . . . [or] [c]ause or attempt to cause physical harm to another . . . by means of a deadly weapon or dangerous ordnance."

{¶11} Mr. Mima's second assignment of error is that there was insufficient evidence before the jury to support his convictions. Determining whether there is sufficient evidence to support a conviction is a question of law that is reviewed de novo. *State v. Thompkins*, 78 Ohio St. 3d 380, 386 (1997); *State v. West*, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶33. An appellate court "examine[s] the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven

beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).

{¶12} Mr. Mima has not argued that the evidence was insufficient to support a conclusion that someone committed the crimes for which he was charged. Rather, he has argued that it was insufficient to support the conclusion that he was one of the people who did so. Specifically, he has argued that the State presented no evidence of his identity in connection with either crime.

{¶13} While Mr. Kathan immediately identified Mr. Hubbard as one of the men who had attacked him, he could not identify the other. Mr. Mima has argued that Ms. Prior merely said that Mr. Mima's face looked familiar. According to him, nobody identified him as the second person involved in the robbery beyond a reasonable doubt and, therefore, he could not properly be found guilty.

{¶14} The State has pointed out, however, that, although Mr. Kathan could not identify Mr. Mima as the second individual, Ms. Prior testified at trial that she was eighty percent sure of Mr. Mima's identity. Also, Lieutenant Jamison testified that Mr. Mima's vehicle was the same color, make, and model as the one in which Ms. Prior saw the attackers leaving the scene. The license plate number of the black Impala that she reported to the 911 operator matched the license plate number of Mr. Mima's black Impala. Further, both Mr. Kathan and Ms. Prior identified Mr. Hubbard as one of the attackers. Mr. Mima identified Mr. Hubbard as a friend in his conversation with Lieutenant Jamison.

{¶15} While much of the State's evidence regarding Mr. Mima's identity was circumstantial, circumstantial evidence is no less persuasive than direct evidence. *State v. Jenks*, 61 Ohio St. 3d 259, 272 (1991). Circumstantial evidence is often more reliable than direct

evidence. *Id.* There was sufficient evidence before the jury to identify Mr. Mima as the second person who attacked Mr. Kathan. His second assignment of error is overruled.

{¶16} Mr. Mima's first assignment of error is that his convictions are against the manifest weight of the evidence. "In determining whether a criminal conviction is against the manifest weight of the evidence an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App. 3d 339, 340 (1986).

{¶17} As discussed above, Mr. Mima has not disputed that the robbery and assault took place. Instead, his argument was one of identity. He has argued that, if there was sufficient evidence to support the jury's determination that he was the second attacker, that determination was against the manifest weight of the evidence.

{¶18} Mr. Mima has argued that no one positively identified him as the second man involved in the Jim's Glass robbery. In particular, he has argued that the victim, Mr. Kathan, never identified him and that Ms. Prior's identification of him was unreliable because she admitted that she was not completely certain. He has pointed out that Ms. Prior merely said that Mr. Mima's face looked familiar and has argued that it could not have been from the robbery because the second man was masked.

{¶19} The State has argued that other evidence showed that Mr. Mima was the second attacker. The attackers were in a black Impala like the one registered to Mr. Mima's stepfather and that Mrs. Colbert said was actually Mr. Mima's. When Lieutenant Jamison spoke with Mr. Mima to discuss his car and where he had been that day, Mr. Mima claimed his license plates

had been stolen only after Lieutenant Jamison informed him that the car had been used in a robbery. The State has argued that regardless of whether the plates were stolen, Mr. Mima gave no explanation for the fact that the car that the men drove at the scene was the exact same make, model, and color as his.

{¶20} The State also pointed out that when Detective Antenucci took Mr. Mima into custody, he made statements that seemed to refer to the Jim's Glass robbery. He testified that, "Nicholas told me he was addicted to pain pills. He said that's why this all happened." He also stated that Mr. Mima told him that Mr. Hubbard had been after him for months "to take this dude off or rob this dude[.]" He also testified that Mr. Mima stated he had already spoken to a lawyer about what to do and he and his lawyer agreed that he would help the police find Mr. Hubbard. He claimed Mr. Hubbard had gotten him in trouble before when he kept quiet and he was not going to do that again.

{¶21} This Court will not overturn the jury's verdict on Mr. Mima's manifest weight of the evidence challenge simply because no person could undeniably state that they witnessed Mr. Mima at the scene of the crime. The weight of the evidence supports the conclusion that Mr. Mima was the second man involved in the crime.

CONCLUSION

{¶22} Mr. Mima's convictions for aggravated robbery with a firearm specification and felonious assault with a firearm specification were based on sufficient evidence and are not against the manifest weight of the evidence. Both of his assignments of error are overruled, and the judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

CARR, P. J.
WHITMORE, J.
CONCUR

APPEARANCES:

RALPH A. CAPRIOLO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.