[Cite as *Sejka v. Sejka*, 195 Ohio App.3d 335, 2011-Ohio-4711.]


STATE OF OHIO      )                 IN THE COURT OF APPEALS
                      )ss:           NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA    )


SEJKA,

      Appellee,

      v.

SEJKA,

      Appellant.

C.A. No.      10CA0133-M


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.     06 DR 0097


DECISION AND JOURNAL ENTRY

Steve C. Bailey, for appellee.

Dean S. Hoover, for appellant.


Dated: September 19, 2011

---

WHITMORE, Judge.

**{¶ 1}** Defendant-appellant, Michael Sejka ("Father"), appeals from the judgment of the Medina County Court of Common Pleas, Domestic Relations Division, modifying the parental rights and responsibilities established between him and plaintiff-appellee, Cynthia Sejka ("Mother"). This court reverses.

I

**{¶ 2}** Mother and Father married in August 1996 and had a daughter together in February 2002. In February 2006, Mother filed for divorce, and Father filed a counterclaim for the same. The parties reached a resolution on matters pertaining to the division of marital property and

parenting terms for their daughter, all of which were set forth in a settlement agreement that was incorporated by reference into the terms of their divorce decree. Under those terms, the parties had agreed that Mother was the residential parent and legal custodian of their daughter and Father was responsible for the payment of child and spousal support. Father agreed to a companionship schedule that resulted in nearly equal parenting time, as they established a "week-on, week-off" arrangement, with a mid-week visitation by the parent not in possession of their daughter. They further agreed at the time that "[a]ll major decisions involving [their child would] be discussed and decided jointly."

{¶ 3} Though the parties were divorced in April 2007 pursuant to the foregoing agreement, they continued to engage in what the court termed a pattern of "high conflict between themselves," focused largely around how the parents would share parental rights and responsibilities for their only daughter. Over time, both parties filed multiple motions challenging the initial terms of their divorce decree. These challenges ultimately culminated in a five-day trial in August 2009, centered on issues of child support, spousal support, parenting time, and the decision-making abilities of each parent with respect to their daughter's care and education. On November 23, 2009, the trial court entered judgment on the foregoing issues, thus resolving all ten of the parties' outstanding motions. In doing so, it noted that the parties had stipulated that the companionship schedule would remain essentially the same, but that they had agreed to specific and detailed terms surrounding decision-making responsibilities related to schooling and medical care; vacation and holiday arrangements; transportation terms; and the time and means of communication with their daughter, as well as with one another.

{¶ 4} Just over two months later, on January 26, 2010, Mother filed a "Motion to Terminate Shared Parenting Plan." In her motion, she alleged that recent email communications

from Father had "made it impossible for [Mother] to co-parent with [Father]." In September 2010, the trial court held a hearing on the matter at which Mother and the child's psychologist testified.

{¶ 5} On November 22, 2010, the trial court modified the terms of the parties' decree, specifically concluding that Mother was deemed "the sole residential and custodial parent" of their child and awarding her "sole and complete authority in determining all matters pertaining to the child's health, education, religious training, extra-curricular activities, and all other matters in which a parent's decision or authority is required." The court further held that Father "is enjoined from interfering in any manner whatsoever with [Mother's] authority herein" and cautioned that "further interference with the parenting of the parties' daughter may result in diminution of [Father's] parenting time."

{¶ 6} Father has timely appealed from the trial court's order, asserting three assignments of error for our review.

II

Assignment of Error Number One

The trial court abused it (sic) discretion by terminating a shared parenting decree when there was no showing of a "change of circumstances," no showing that the proposed change of custody was "necessary to serve the best interest of the child," and no showing that the "harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

{¶ 7} In his first assignment of error, Father argues that the trial court abused its discretion because there was an absence of any evidence to support its decision. Specifically, he asserts that the trial court erred when it failed to make the requisite finding that there was a change in circumstances and, further, that there was no evidence demonstrating that a change in circumstances had occurred since the parties' decree was issued. He also asserts that there was a

lack of evidence demonstrating that it was in their daughter's best interest to modify the existing shared-parenting plan or that the harm by any change to the parenting plan would be outweighed by the advantages that change would have on their daughter. Additionally, he asserts that the trial court relied on matters not even in evidence, in that it found that his testimony "lack[ed] credibility" when, in fact, he had not testified. We agree.

{¶ 8} Initially, we note that though Mother captioned her motion as a "Motion to Terminate Shared Parenting Plan" and Father, too, challenges the changes to their shared-parenting plan, the record reveals that the parties did not, in fact, ever enter into such a plan. Instead, the record reveals that Mother was named the custodial and residential parent in the parties' initial decree, while Father was awarded companionship time, though they agreed to allocate that time on a nearly equal basis. Though Mother and Father agreed between themselves to split parenting time on a 50-50 basis, such an agreement does not translate into a shared-parenting plan under the law. See *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, at ¶ 22-25 (contrasting the situation where one parent is named the residential parent and legal custodian with circumstances where shared parenting is ordered and the decree either names both parents as the residential parent and legal custodian or is silent on that issue). See also id. at ¶ 55 (Pfeifer, J., dissenting) (dissenting on other grounds, but noting that pursuant to R.C. 3109.04(A)(1), "[t]he designation of one parent as the residential parent and legal custodian occurs only in cases where shared parenting is rejected"). Rather, the parties' separation agreement set forth how they had agreed to allocate their parental rights and responsibilities, and notably, provided that "[a]ll major decisions involving [their child would] be discussed and decided jointly." The designation of Mother as custodial parent remained intact following the parties' August 2009 trial on issues related to their parental rights and responsibilities, child

support, and spousal support. Because the issue of schooling was one of the contested matters at the time, the trial court specifically reiterated that Mother was the residential parent for purposes of schooling in its November 2009 order as well. Thus, it is clear that when Mother filed her "Motion to Terminate Shared Parenting Plan," there was not a shared-parenting plan in place. More importantly, it is clear that since the parties' divorce decree was entered, Mother has been the sole custodial and residential parent over the parties' daughter. It is further apparent from the content of Mother's motion that she sought only to modify the allocation of parental rights, namely the requirement that she consult with Father on parenting decisions related to their daughter, not her designation as the residential and custodial parent.

{¶ 9} In light of the foregoing clarifications, we next consider the trial court's decision in this matter. Trial courts have broad discretion in their allocation of parental rights and responsibilities. *Graves v. Graves*, 9th Dist. No. 3242-M, 2002-Ohio-3740, at ¶ 31, citing *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74. Accordingly, this court will not overturn a trial court's decision in such matters unless we conclude that the trial court abused its discretion. An abuse of discretion implies that " 'the court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, quoting *State v. Adam*s (1980, 62 Ohio St.2d 151, 157. A trial court abuses its discretion if its factual findings are not supported by competent, credible evidence. *Maxwell v. Maxwell*, 9th Dist. No. 07CA0047, 2008-Ohio-1324, at ¶ 6. A trial court errs as a matter of law, however, when it misapplies a statute. *Bentley v. Rojas*, 9th Dist. No. 10CA009776, 2010-Ohio-6243, at ¶13.

{¶ 10} Pursuant to R.C. 3109.04(E)(1)(a), a trial court cannot modify an existing allocation of parenting rights and responsibilities "[U]nless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree,

that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child." Also, " 'before a modification can be made pursuant to R.C. 3109.04(E)(1)(a), the trial court must make a threshold determination that a change in circumstances has occurred.' " *Buttolph v. Buttolph*, 9th Dist. No. 09CA0003, 2009-Ohio-6909, at ¶ 11, quoting *Gunderman v. Gunderman*, 9th Dist. No. 08CA0067-M, 2009-Ohio-3787, ¶ 9, citing *Fisher* 116 Ohio St.3d 53, 2007-Ohio-5589, at syllabus. The Ohio Supreme Court has held that the requisite change of circumstances "must be a change of substance, not a slight or inconsequential change." *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418.

{¶ 11} As stated above, there is not a shared-parenting plan, and hence, no shared-parenting decree, involved in this case. Thus, the change in circumstance required by statute in order to modify the parties' allocation of parental rights must necessarily relate to a change in the circumstances of the child or of Mother, as she is the child's residential parent. See R.C. 3109.04(E)(1)(a). At the hearing, Mother and the child's treating psychologist testified. Additionally, Mother and Father both introduced e-mail communications exchanged between them at various points between the trial court's November 2009 journal entry and the filing of Mother's motion in January 2010.

{¶ 12} Based on this evidence, the trial court found that "[t]he parties have an extensive history of high conflict" and that since the most recent hearing just two months prior to the filing of Mother's motion, they "have continued their pattern of behavior resulting in nasty conflict." The court went on to note that the conflict between the parties "[was] having a deleterious effect upon the child." The trial court pointed to e-mail communications admitted at the hearing in which Father was "verbally abusive and cruel" to Mother and concluded that "co-parenting

between the parties [is] untenable." The court further concluded, based on the testimony of the child's psychologist, that the child is "too aware of the parents' continuing conflict and that the conflict is detrimental to the child." The trial court did not, however, ever conclude that any of the testimony or exhibits adduced at the hearing, demonstrating the continuing discord between the parties, constituted a change in the circumstances of the child or Mother, the child's residential parent. See id. See also *Buttolph,* 2009-Ohio-6909, at ¶ 12 (reversing the trial court's decision to modify a shared-parenting plan where "neither the magistrate nor the trial judge made the requisite finding in either entry that there was a change of circumstances").

{¶ 13} To the extent that the trial court's conclusion that the parties' continued hostility toward one another was having a "deleterious effect" on their child could be considered a finding that there had been a change in the circumstances of the child, the evidence adduced at the hearing does not support that conclusion. Instead, the child's treating psychologist agreed with Father that he has improved in his willingness to work with Mother on parenting issues and that his e-mail communications with Mother are "[g]enerally * * * appropriate." She further noted that the messages from Father that were "[o]ccasionally * * * more inflammatory" have decreased over time and that "eventually it appears that [Mother and Father] do get to a solution with each other." The psychologist testified that the child is "aware that there[ is] a level of tension between her parents, but * * * that she is, in general, less preoccupied with it." The psychologist concluded, "In general, there have not been any major conflicts between [the child's] parents that have had an impact on [the child's] emotional status" and that her condition since November 2009 "has improved." To the extent that the trial court relied upon the

psychologist's testimony to conclude that the child was "too aware of the parents' continuing conflict," the transcript reveals that the psychologist made such a statement, but when further questioned on that point, stated she was "[n]ot particularly" aware of who provides the child with such information.

{¶ 14} The record is devoid of any testimony that Mother has experienced a change in circumstances sufficient to warrant a modification to the parties' allocation of parental rights. The bulk of Mother's testimony surrounded her difficulties in working with Father around vacation times and medical appointments. Her testimony centered little on what, if any, change in circumstances, had occurred with either her or the child in the two months since the parties had last modified their allocation of parental rights. Instead, Mother's testimony supports a finding quite the opposite of the statutory requirement of R.C. 3109.04(E)(1)(a) – that the circumstances of the parties have remained disharmonious.

{¶ 15} While this court neither condones nor endorses the manner in which Father has conducted himself with Mother in the course of their e-mail communications, we cannot conclude based on the evidence contained in the record that there has been a substantial change in the circumstances of the child or Mother since the court last addressed this issue in November 2009. *Davis*, 77 Ohio St.3d at 418. The framework of R.C. 3109.04 is designed to prevent precisely what Mother is attempting to accomplish through her motion, as the statute requires that a party demonstrate that there has been a significant change in circumstances in order to modify the allocation of parental rights set forth under the terms of a decree. *Fisher*, 116 Ohio St.3d 53, 2007-Ohio-5589, at ¶ 32-34. See also *Davis*, 77 Ohio St.3d at 418.

{¶ 16} To the extent that the trial court failed to make the requisite finding that there was a change in circumstances pursuant to R.C. 3109.04, it erred as a matter of law in proceeding to

modify the parties' allocation of parental rights. To the extent that the trial court intended its finding related to the daughter to demonstrate a change in circumstances, the trial court abused its discretion in doing so, as that finding is not supported by the evidence adduced at trial. Accordingly, Father's first assignment of error is sustained.

### Assignment of Error Number Two

The trial court erred as a matter of law and violated father's fundamental constitutional parental right to educate the parties' child in father's religious values by granting mother 'complete authority' to determine the child's "religious training."

### Assignment of Error Number Three

The trial court erred as a matter of law and violated father's fundamental constitutional parental right to visitation with the parties' child by entering its order that father may be subjected to a "diminution of his parenting time" as a penalty for father's "interference with the parenting time of the parties' daughter."

{¶ 17} In light of our disposition of Father's first assignment of error, we decline to address his second and third assignments of error, as they are moot. App.R. (12)(A)(1)(c).

### III

{¶ 18} Father's first assignment of error is sustained. His remaining assignments of error are moot. The judgment of the Medina County Court of Common Pleas, Domestic Relations Division, is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

CARR, P.J., and DICKINSON, J., concur.

DICKINSON, J., concurring.

{¶ 19} I concur in the majority's judgment and most of its opinion. I do not, however, concur in the statement in paragraph 16 that "[t]o the extent that the trial court intended its finding related to the daughter to demonstrate a change in circumstances, the trial court abused its discretion in doing so, as that finding is not supported by the evidence adduced at trial." This court reviews whether a finding is supported by sufficient evidence de novo. See, e.g., *State v. Mima*, 9th Dist. No. 25540, 2011-Ohio-3798, at ¶ 11. If it is not supported by sufficient evidence, it must be reversed. A trial court does not have discretion to make a finding that is not supported by sufficient evidence, and to say that the trial court abused its discretion in doing so is to confuse two very different standards of review.