[Cite as *Sejka v. Sejka*, 2017-Ohio-2.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

CYNTHIA A. SEJKA

    Appellant

    v.

MICHAEL D. SEJKA

    Appellee

C.A. No.    15CA0091-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    CV-06 DR 0097

DECISION AND JOURNAL ENTRY

Dated: January 2, 2017

---

JONES, Judge.

{¶1}　This appeal is on assignment from the Ninth District Court of Appeals. Plaintiff-appellant, Cynthia Sejka ("Mother"), appeals the trial court's decision to grant medical decisions to defendant-appellee, Michael Sejka ("Father"). For the reasons that follow, we affirm.

{¶2}　Mother and Father married in August 1996 and had a daughter together in February 2002.[1] In February 2006, Mother filed for divorce, and Father filed a counterclaim for the same. The parties reached a resolution on matters pertaining to the division of marital property and parenting terms for their daughter, all of which were set forth in a settlement agreement that was incorporated by reference into the terms of their divorce decree. Under those terms, the parties had agreed that Mother was the residential parent and legal custodian of their daughter and Father was responsible for the payment of child and spousal support. Father agreed

---

[1]The following facts are taken from *Sejka v. Sejka*, 195 Ohio App.3d 335, 2011-Ohio-4711, 959 N.E.2d 1091 (9th Dist.).

to a companionship schedule that resulted in nearly equal parenting time, as they established a "week-on, week-off" arrangement, with a mid-week visitation by the parent not in possession of their daughter. They further agreed at the time that "[a]ll major decisions involving [their child would] be discussed and decided jointly."

{¶3} Although the parties were divorced in April 2007, they continued to engage in what the trial court termed a pattern of "high conflict between themselves," focused largely around how they would share parental rights and responsibilities for their daughter. Both parties filed multiple motions challenging the initial terms of their divorce decree. In August 2009, the trial court held a hearing on issues of child support, spousal support, parenting time, and the decision-making abilities of each parent with respect to their daughter's care and education. In November 2009, the trial court entered judgment, noting that the parties had stipulated that the companionship schedule would remain essentially the same, but that they had agreed to specific and detailed terms surrounding: decision-making responsibilities related to schooling and medical care; vacation and holiday arrangements; transportation terms; and the time and means of communication with their daughter, as well as with one another.

{¶4} The parties continued to file post-decree motions and, in 2010, Mother moved to modify the allocation of parental rights, namely the requirement that she consult with Father on parenting decisions related to the child. The trial court held a hearing and entered an order, modifying the terms of the parties' divorce decree, deeming Mother "the sole residential and custodial parent" of the child and awarding Mother "sole and complete authority in determining all matters pertaining to the child's health, education, religious training, extra-curricular activities, and all other matters in which a parent's decision or authority is required." The court further ordered that Father was "enjoined from interfering in any manner whatsoever with

[Mother's] authority" and cautioned that "further interference with the parenting of the parties' daughter may result in diminution of [Father's] parenting time."

{¶5} Father appealed. The Ninth District found that the evidence adduced at the hearing did not support a finding that there was a change in circumstances of the child or Mother that would allow modification of parental rights, therefore, the trial court erred as a matter of law. *Sejka*, 195 Ohio App.3d 335, 2011-Ohio-4711, 959 N.E.2d 1091, at ¶ 16.

{¶6} The appellate court remanded the case to the trial court. The parties proceeded to file additional motions. In December 2013, Mother filed a motion to give her sole medical decision making authority, arguing that she was having a hard time finding a medical provider for her daughter, who was on daily medication, due to the conflict between Mother and Father. The trial court granted her motion. Father moved to vacate that order, claiming he never received the service.

{¶7} The trial court held a hearing on the motion on March 10, 2014, vacated its previous order, and gave Father "final medical decision making authority for the minor child."

{¶8} The trial court held successive hearings on the parties' other motions and issued a judgment entry on June 1, 2015 resolving all pending motions.

{¶9} Mother now appeals from the March 10, 2014 order granting Father medical decision making authority over the minor child and raises one assignment of error for our review:

> I. The trial court erred in allocating to a non-custodial parent authority that inextricably belongs with the custodial parent.

{¶10} As an initial matter, the parties raise the issue of whether Mother timely filed her appeal because she is appealing a March 10, 2014 order and did not file her notice of appeal until eighteen months later. Mother argues that she did not receive service of the March 10, 2014

order.

{¶11} App.R. 4(A)(1) provides that an appeal must be filed within 30 days of a final order. But App.R.4(A)(3) states that "[i]n a civil case, if the clerk has not completed service of the order within the three-day period prescribed in Civ.R. 58(B), the 30-day periods referenced in App.R. 4(A)(1) and 4(A)(2) begin to run on the date when the clerk actually completes service."

{¶12} App.R. 4(A)(1) provides a party 30 days from entry of a judgment to perfect an appeal, and Civ.R. 58(B) mandates that the clerk of court's office serve the order with an accompanying notation on the appearance docket. *Clermont Cty. Transp. Improvement Dist. v. Gator Milford, L.L.C.*, 141 Ohio St.3d 542, 2015-Ohio-241, 26 N.E.3d 806, ¶ 11.

{¶13} Father tries to distinguish *Gator Milford* by arguing that, as a matter of public policy, a party must at a some point have confidence and security that his or her judgment will not be subjected to an appeal years later due to a clerical issue on the part of the court. While we can appreciate Father's argument, we note that the supreme court's language in *Gator Milford* was unequivocal:

> We are talking about the very foundation for jurisdiction in the appellate court. It is simply too important to allow for notice in a casual manner. * * * The 30-day time period to file a notice of appeal begins upon service and notation of service on the docket by the clerk of courts regardless of actual knowledge by the parties.

*Id.* Moreover, Father cannot claim complete surprise that Mother appealed an issue related to their post-decree motions as the trial court did not issue a judgment entry related to Mother and Father's other post-decree motions until June 1, 2015, less than 30 days before Mother filed her notice of appeal.

{¶14} Therefore, we find that we have jurisdiction to hear this appeal.

{¶15} In her sole assignment of error, Mother challenges the trial court's ruling that it

was in the child's best interest to allocate medical decision making authority to the Father.

**{¶16}** A trial court has broad discretion in its allocation of parental rights and responsibilities. *Graves v. Graves*, 9th Dist. Medina No. 3242-M, 2002-Ohio-3740, ¶ 31, citing *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). Appellate courts must afford "the utmost respect" to the trial court's exercise of discretion because "the knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." *Id.* citing *id.* Consequently, a reviewing court may not overturn a trial court's determination regarding the allocation of parental rights and responsibilities absent an abuse of discretion. *Graves* at *id.*, citing *Donovan v. Donovan*, 110 Ohio App.3d 615, 618, 674 N.E.2d 1252 (12th Dist.1996). An abuse of discretion implies that the trial court's decision was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). That being said, an appellate court's review of the interpretation and application of a statute is de novo; therefore, the reviewing court does not give deference to a trial court's determination in that regard. *Tustin v. Tustin*, 9th Dist. Summit No. 27164, 2015-Ohio-3454, ¶ 37, citing *Curran v. Kelly*, 9th Dist. Medina No. 10CA0139-M, 2012-Ohio-218, ¶ 6.

**{¶17}** Mother argues that the trial court abused its discretion in giving Father exclusive authority to make medical decisions on behalf of the child because Mother is the child's custodial and residential parent and, as such, is the one who is better suited to make the medical decisions for the child.

**{¶18}** R.C. 3109.04(A)(1) applies to this case because the parents do not have a shared parenting plan and states in relevant part:

(A) In any * * * proceeding pertaining to the allocation of parental rights and responsibilities for the care of a child, * * * the court shall allocate the parental

rights and responsibilities for the care of the minor children of the marriage [and] may allocate the parental rights and responsibilities for the care of the children in either of the following ways:

(1) If neither parent files a pleading or motion [for shared parenting], if at least one parent files a pleading or motion [for shared parenting] but no parent who filed [such] also files a plan for shared parenting, or if at least one parent files both a pleading or motion and a shared parenting plan * * * but no plan for shared parenting is in the best interest of the children, the court, in a manner consistent with the best interest of the children, shall allocate the parental rights and responsibilities for the care of the children *primarily* to one of the parents, designate that parent as the residential parent and the legal custodian of the child, and *divide between the parents the other rights and responsibilities for the care of the children*, including, but not limited to, the responsibility to provide support for the children and the right of the parent who is not the residential parent to have continuing contact with the children.

(Emphasis added.).

{¶19} Pursuant to the statute, the residential parent and legal custodian of the child, Mother in this case, is granted *primary* allocation of parental rights and responsibilities regarding the child; the statute expressly does not allocate parental rights and responsibilities exclusively to one party. *Id.*

{¶20} In support of her position, Mother cites *Tustin*, where the Ninth District reversed the trial court's order that had designated the mother as the residential parent and legal custodian of the child but ordered both mother and father to "jointly make decisions which concern the health and safety of their child except in the case of an emergency." *Id.* at ¶ 39. The Ninth District found that the trial court erred and effectively created a "hybrid allocation of parental rights and responsibilities in contravention of the language of R.C. 3109.04" by designating the mother as the residential parent and legal custodian of the child, yet ordering the father would have the right to share in some aspects of the physical and legal care of the child. *Id.* at ¶ 41. Because the trial court designated the mother as the residential parent and legal custodian of the child, the court found it necessarily granted her the physical and legal control of the child, and

therefore acted in contravention of R.C. 3109.04 by also awarding the father joint authority over some aspects of the child's physical and legal care. *Tustin* at *id.*

{¶21} Father contends that *Tustin* can be distinguished from this case because the parties in *Tustin* had a hybrid parenting plan. In this case, Father was only allocated *sole* authority over medical decisions. We agree with Father's position.

{¶22} R.C. 3109.04(A) provides that if one parent is allocated the primary parental rights and responsibilities for the care of a child, that parent is designated the residential parent and legal custodian of the child. *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 22. "Therefore, the residential parent and legal custodian is the person with the primary allocation of parental rights and responsibilities. When a court designates a residential parent and legal custodian, the court is allocating parental rights and responsibilities." *Id.* The statute further provides that the court, in a manner consistent with the best interest of the child, shall divide the *other* rights and responsibilities for the care of the child between the parents. That is what the court did in this case.

{¶23} The trial court ruled that Father's authority to make the medical decisions on behalf of his daughter was subject to five specific directives: (1) Father must seek out and consider Mother's input; (2) both parents are to have full access to medical records and can attend medical appointments with Father giving Mother adequate notice of appointments and making effort to accommodate her schedule; (3) Father is to timely share medical information with Mother; (4) both parties are to follow doctors' recommendations, treatments and prescriptions; and (5) Mother can seek a second opinion.

**{¶24}** The Guardian Ad Litem ("GAL") testified at the March 10, 2014 hearing that he recommended that Father have final medical decision making authority even though he had originally recommended the authority go to Mother. The GAL testified that he changed his mind because Mother had been unilaterally making and taking the child to doctor appointments without consulting or notifying Father, in contravention of the parties' divorce decree. The GAL admitted the Father had not always abided by doctors' recommendations, but still opined that Father should have the final authority on medical decisions, with conditions.

**{¶25}** Father testified that there had been ongoing problems with Mother in regard to their child's medical issues. According to Father, the child was on daily medication but Mother would sometimes not give Father his share of the medicine and he would run out of medicine for the child. Father testified that Mother would withhold giving him his share of medicine for the child until he paid for it, even though the child was on the Mother's health insurance plan.

**{¶26}** Mother testified that she moved for sole medical decision making authority because two of the child's doctors had said that they would no longer treat the child due to the parents' inability to get along. Mother also believed she should make the medical decisions because she disagreed with some of Father's decisions when it came to their child. For example, Father purchased the child contact lenses for swimming without discussing it with Mother, allowed his wife to teach the child how to shave her legs, and would not make the child wear her shoe inserts. Mother believed the child was too young for contact lenses and should have prescription goggles instead and needed to wear her orthotics.

**{¶27}** We find *Carr v. Carr*, 12th Dist. Warren Nos. CA2015-02-015 and CA2015-03-020, 2016-Ohio-6986, instructive. The court noted that R.C. 3109.04(A)(1) grants primary allocation of parental rights and responsibilities for care of a child to one of the parents, but not

exclusive allocation of these rights and responsibilities. In *Carr*, the father argued that he should have exclusive medical decision making authority because he was the residential parent and legal custodian of the parties' child. The court disagreed and explained that under R.C. 3109.04(A)(1),

> '[f]or obvious reasons, the legal custodian and residential parent of children * * * is normally vested with the power to make non-emergency medical decisions[,] [but] this is not a requirement of the law. The power may be shared between the legal custodian and residential parent, and the other parent.'

*Carr* at ¶ 35, quoting *Nicola v. Nicola*, 11th Dist. Lake No. 2014-L-062, 2015-Ohio-3540, ¶ 13.

The *Carr* court explained:

> [Although] Mother has sole authority over non-emergency medical decisions regarding the children, Father can nevertheless fulfill his role as primary caretaker and legal custodian of the children. Father retains significant authority as residential parent and legal custodian of the children, including the authority to determine the children's school, extracurricular activities, religious affiliation, and associations.

*Id.* at ¶ 36.

{¶28} The same is true in this case. While Father may have final authority over medical decisions regarding the child, Mother will still be the child's primary caretaker and legal custodian and, as such, retains significant authority over the child. The conditions the court put in place also restrain the Father from unilaterally making medical decisions for the child without the Mother's input. Father must take Mother's schedule into account when scheduling doctor's appointments, notify and allow Mother access to the appointments, give Mother access to the child's medical records, and Mother is allowed to seek a second opinion. Further, the court order mandates that both parents must follow doctors' recommendations as to the child, something Mother and Father have each claimed the other has not done. Thus, while Father may have exclusive medical decision making authority over the minor child, the court's conditions limit

that authority and give Mother broad access to facilitate the child's medical needs.

{¶29} In light of the above, and considering our role as a reviewing court, we find that the trial court did not err as a matter of law or abuse its discretion in determining that Father was to have final medical decision-making authority over the minor child.

{¶30} The sole assignment of error is overruled.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
LARRY A. JONES, SR.
FOR THE COURT

KILBANE, J.
LASTER, J.
CONCUR.

(Jones, J., Kilbane, J., and Laster, J., of the Eighth District Court of Appeals, sitting by assignment.)

APPEARANCES:

STEVE C. BAILEY, Attorney at Law, for Appellant.

DENISE R. MICHALSKE, Attorney at Law, for Appellee.