[Cite as *Smith v. Smith*, 2021-Ohio-3016.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

KELLIE A. SMITH

    Appellee

    v.

MICHAEL TYLER SMITH

    Appellant

C.A. No.     29754

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DR-2019 03 0546

DECISION AND JOURNAL ENTRY

Dated: September 1, 2021

---

CARR, Judge.

**{¶1}** Appellant Michael Tyler Smith ("Father") appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. This Court reverses and remands the matter for proceedings consistent with this decision.

I.

**{¶2}** Father and Appellee Kellie Ann Smith ("Mother") were married January 24, 2012. The parties have four children, three daughters and a son. In November 2016, the parties filed a petition for dissolution. On January 9, 2017, a decree of dissolution was filed, which incorporated an agreed plan and agreement of parental rights and responsibilities ("Parenting Plan") and a separation agreement. Mother was named the legal custodian and residential parent and Father received liberal parenting time. While Father was not required to pay child or spousal support, the Parenting Plan included a provision that Mother should maintain the children on

Medicaid as long as they were eligible.  In addition, Father was required to pay numerous expenses of the children and Mother.

{¶3}    In December 2017, Father filed a motion for relief from judgment.  The trial court denied the motion and Father appealed.  *See Smith v. Smith*, 9th Dist. Summit No. 28961, 2019-Ohio-129.  This Court reversed the judgment of the trial court and ordered it to vacate the Parenting Plan and separation agreement.  *See id.* at ¶ 19.

{¶4}    In March 2019, Mother filed a complaint for divorce under a new case number.[1] Ultimately, in December 2019, a hearing was held before the trial court.  The trial court issued a divorce decree on April 21, 2020.  Therein, inter alia, the trial court designated Mother the residential parent and legal custodian of the children and awarded Father parenting time.

{¶5}    Father has appealed, raising three assignments of error for our review.  Due to their related nature, the first two assignments of error will be considered together.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT'S AWARD OF SOLE CUSTODY TO MOTHER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.  THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE TRIAL COURT'S AWARD.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED IN FAILING TO GRANT AN ALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES IN THE BEST INTEREST OF THE MINOR CHILDREN.

---

[1] For unclear reasons, the dissolution was vacated but that is not an issue raised on appeal.

{¶6} Father argues in his first assignment of error that the trial court's decision naming Mother the residential parent and legal custodian of the children was against the manifest weight of the evidence. Specifically, Father maintains the trial court's findings relative to the R.C. 3109.04(F)(1) best interest factors are not supported by the record. Father asserts in his second assignment of error that the trial court erred in concluding that *Tustin v. Tustin*, 9th Dist. Summit No. 27164, 2015-Ohio-3454, ¶ 36-41, required it to allocate parental rights and responsibilities to only one party.

{¶7} "A trial court possesses broad discretion with respect to its determination of the allocation of parental rights and responsibilities, and its decision will not be overturned absent an abuse of discretion." *Kokoski v. Kokoski*, 9th Dist. Lorain No. 12CA010202, 2013-Ohio-3567, ¶ 26. Nonetheless, as to the trial court's findings with respect to the statutory best interest factors, "[t]his Court has held that what is in the best interest of a child is primarily a question of fact that should be reversed only if it is against the manifest weight of the evidence." *Id.* "When reviewing the manifest weight of the evidence in a civil case, this Court 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Id.*, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001). Further, this Court must affirm individual factual conclusions of the trial court if they are supported by competent, credible evidence. *See Harrison v. Lewis*, 9th Dist. Summit No. 28114, 2017-Ohio-275, ¶ 9.

{¶8} R.C. 3109.04(A) provides:

In any divorce, legal separation, or annulment proceeding and in any proceeding pertaining to the allocation of parental rights and responsibilities for the care of a

child, upon hearing the testimony of either or both parents and considering any mediation report filed pursuant to section 3109.052 of the Revised Code and in accordance with sections 3127.01 to 3127.53 of the Revised Code, the court shall allocate the parental rights and responsibilities for the care of the minor children of the marriage. Subject to division (D)(2) of this section, the court may allocate the parental rights and responsibilities for the care of the children in either of the following ways:

(1) If neither parent files a pleading or motion in accordance with division (G) of this section, if at least one parent files a pleading or motion under that division but no parent who filed a pleading or motion under that division also files a plan for shared parenting, or if at least one parent files both a pleading or motion and a shared parenting plan under that division but no plan for shared parenting is in the best interest of the children, the court, in a manner consistent with the best interest of the children, shall allocate the parental rights and responsibilities for the care of the children primarily to one of the parents, designate that parent as the residential parent and the legal custodian of the child, and divide between the parents the other rights and responsibilities for the care of the children, including, but not limited to, the responsibility to provide support for the children and the right of the parent who is not the residential parent to have continuing contact with the children.

(2) If at least one parent files a pleading or motion in accordance with division (G) of this section and a plan for shared parenting pursuant to that division and if a plan for shared parenting is in the best interest of the children and is approved by the court in accordance with division (D)(1) of this section, the court may allocate the parental rights and responsibilities for the care of the children to both parents and issue a shared parenting order requiring the parents to share all or some of the aspects of the physical and legal care of the children in accordance with the approved plan for shared parenting. If the court issues a shared parenting order under this division and it is necessary for the purpose of receiving public assistance, the court shall designate which one of the parents' residences is to serve as the child's home. The child support obligations of the parents under a shared parenting order issued under this division shall be determined in accordance with Chapters 3119., 3121., 3123., and 3125. of the Revised Code.

{¶9}   In determining what is in the best interest of the children, the trial court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶10} While a full summary of the proceedings is unnecessary, it is important to have an overview of the parties' interactions in order to understand that allocating parental rights and responsibilities in this case was not a straightforward or simple task. Unfortunately, as noted by the trial court, the record reveals that the parties have a long and continued history of acrimony.

The parties have been unable to effectively communicate or reach agreements. The guardian ad litem testified that the parties were not capable of shared parenting because of their "intense animosity towards each other." The guardian ad litem recommended parallel parenting, which she described as one parent being responsible for one section of the children's care and the other parent being responsible for another section of the children's care. The guardian ad litem recommended that Mother be responsible for educational decisions and Father be responsible for medical decisions. The guardian ad litem recommended "two, two, five parenting time[.]" Notably, the guardian ad litem did not recommend either parent be the residential parent of the children. The guardian ad litem believed it was important for both parents to be part of the children's lives and did not think either parent should have full custody.

{¶11} The guardian ad litem testified that Father had complied with a substance abuse assessment and was found not to have any issues. However, both parents have adjustment disorder with anxiety, which the guardian ad litem described as being normal during a divorce. While the parties initially tried to engage in co-parenting therapy, the therapist terminated the first session after only a short period of time due to Mother's behavior.

{¶12} The record discloses evidence that both parents engaged in inappropriate behavior with respect to the other parent. Mother was convicted of disorderly conduct for actions she took to interfere with Father's business, and Mother's probation was subsequently extended due to her conduct. Mother also made reports to Children's Services about Father, which were ultimately determined to be unsubstantiated. In addition, the guardian ad litem expressed concerns about Mother's credibility; however, the trial court did not indicate whether it found Mother credible.

{¶13} Mother described concerning incidents involving Father. In March 2017, after Father failed to come to Mother's house to pick up the children, Mother went to Father's

residence and discovered Father passed out on the floor next to an empty beer can and packets of tobacco. The oldest child was in the room with him. When Father woke up, he ripped the phone from Mother's hand and threw her out of the residence while the child was watching. This incident led to Father being limited to supervised parenting time. In April 2019, Father was authorized to have unsupervised parenting time again.

{¶14} In June 2017, Father came over to Mother's house to do yard work. Mother indicated he was slurring his words and appeared to be drunk. Father became upset and threw the weedwhacker in front of the oldest child. While all the children were around, he began swearing at Mother very loudly. Father then told Mother he was going to kill her. A neighbor heard and called the police. While Mother did not want charges filed, the State proceeded to prosecute Father. Father was charged with domestic violence but pleaded guilty to menacing.

{¶15} A neighbor of Mother's and Mother's father also testified. They testified that on separate occasions they each heard at least one of the children say that Father had threatened to kill Mother. Mother's sister also testified that, in 2015, while Mother was pregnant with the youngest child, Father put his hands around Mother's neck while she was on the phone with Mother's sister. Father then proceeded to punch the wall. Father denied that he ever threatened to kill Mother.

{¶16} Both parties asserted that the other parent was not completely cooperative in facilitating phone contact with the parent then not in possession of the children. Further, Father relayed instances in which Mother prevented him from being in the room for the children's medical appointments; Mother maintained she was concerned about Father's prior abusive behavior. The parties also provided differing versions of events with respect to whether the

children missed activities while in Father's care and with respect to whether Father timely made support payments.

{¶17} Notwithstanding the behavior of the parents, the guardian ad litem indicated that the children were happy, loving, and doing well in school. The children expressed the desire to spend time with both parents and did not indicate fear of either parent.

### Best Interest Factors

{¶18} While Father challenges all of the trial court's finding with respect to the best interest factors, this Court will limit its focus to the ones that it views as particularly concerning given the evidence in the record.

{¶19} Those findings deal with the factors in R.C. 3109.04(F)(1)(f) and 3109.04(F)(1)(g). R.C. 3109.04(F)(1)(f) is the factor that examines "[t]he parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights[.]" The trial court determined that "[Mother] is less likely than [Father] to interfere with the other parent's parenting time." It is unclear from the record what prompted the trial court to make this finding. The trial court did not express any concerns about the parties' credibility in the judgment entry. From an objective review of the record, it appears that both parties have difficulty at times facilitating parenting time. Mother testified that Father does not make the children available for the scheduled call when they are in his care. However, Father testified that when he tries to talk to the children when they are in Mother's care, Mother will not let the children talk to him alone and makes comments during his calls. Because of Mother's interference, Father has indicated that he has stopped trying to call the children. The guardian ad litem's report evidences that Mother frequently spoke with the children while at Father's house and that Father did not call as often. Father also reported that Mother kept Father from being in

the doctor's office with her at medical appointments. Mother did not appear to dispute this; instead, commenting that Father was welcome in the waiting room and to see the doctor when Mother was not in the room. Mother expressed concerns about Father based upon prior alleged abuse. There was also evidence that Mother would not let Father move his weeknight parenting night so that Father could attend a court-mandated program. Father had to seek court intervention to move the parenting night. Given the foregoing, we cannot say that the record supports the trial court's finding with respect to R.C. 3109.04(F)(1)(f).

{¶20} R.C. 3109.04(F)(1)(g) instructs the court to examine "Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor[.]" With respect to this factor, the trial court concluded that "[Mother] testified that [Father] was erratic in making his support payments under the parties' separation agreement." This finding is especially troubling to this Court. The parties' decree of dissolution, which included a parenting plan and separation agreement, listed Father's child support obligation as zero dollars. No child support worksheet was attached to the decree of dissolution contained in this Court's record. Instead, the decree of dissolution provided that Father would pay numerous expenses of the children and Mother. The record before this Court does not support the conclusion that those expenses were part of a child support order. Thus, this finding by the trial court is erroneous. The trial court should not have characterized any failure by Father to make payments required under the decree of dissolution as evidence that Father failed to make child support payments. *See Severns v. Foster*, 3d Dist. Marion No. 9-18-21, 2019-Ohio-909, ¶ 37 (concluding that R.C. 3109.04(F)(1)(g) was inapplicable when there was no child support order).

### *Tustin v. Tustin*

{¶21} In the judgment entry, the trial court stated that it had "considered the recommendation of the Guardian ad Litem for 'parallel co-parenting.' Given the parties' history of acrimony, the Court does not accept the Guardian ad Litem's recommendation." (Emphasis omitted.) In so doing, the trial court cited only to *Tustin*.

{¶22} As noted above, the guardian ad litem recommended parallel parenting and described it as one parent being responsible for one section of the children's care and the other parent being responsible for another section of the children's care. For example, in this context, the guardian ad litem recommended that Mother be responsible for educational decisions for the children and Father be responsible for the medical decisions. The guardian ad litem also did not recommend that either parent be the residential parent and legal custodian of the children. While the trial court was required to comply with the dictates of R.C. 3109.04 in the allocation of parental rights and responsibilities, it appears that the trial court believed that *Tustin* imposed a barrier to allocating any rights and responsibilities to Father when it named Mother the residential parent and legal custodian. Because this is a misunderstanding of this Court's precedent, we conclude that the trial court erred with respect to this finding as well.

{¶23} In *Tustin*, "[t]he domestic relations court considered R.C. 3109.04 in allocating parental rights and responsibilities for the care of the child, and designated Wife as the residential parent and legal custodian of the child. The trial court further ordered that '[t]he parties shall jointly make decisions which concern the health and safety of their child except in the case of an emergency.'" *Tustin*, 2015-Ohio-3454, at ¶ 39. After reciting the language of R.C. 3109.04(A), this Court concluded:

> By designating Wife as the residential parent and legal custodian of the child, yet
> ordering that Husband shall have the right to share in some aspects of the physical

and legal care of the child, the trial court effectively created a hybrid allocation of parental rights and responsibilities in contravention of the language of the statute. This Court can find no authority to support such an allocation of parental rights and responsibilities. In fact, the Ohio Supreme Court has recognized that "parental rights and responsibilities reside in the party or parties who have the right to the ultimate legal and physical control of a child." *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 22. As the trial court designated Wife as the residential parent and legal custodian of the child, necessarily granting her the physical and legal control of the child, it erred in contravention of R.C. 3109.04 by also awarding Husband joint authority over some aspects of the physical and legal care of the child.

*Tustin* at ¶ 41.

{¶24} Standing alone, this case might at first glance seem to support the trial court's judgment. However, this Court later distinguished *Tustin* in *Sejka v. Sejka*, 9th Dist. Medina No. 15CA0091-M, 2017-Ohio-2.

{¶25} In *Sejka*, the Mother, who was the residential parent and legal custodian of the parties' child, challenged the trial court's post-decree decision granting medical decision-making authority to Father. *Id.* at ¶ 2, 7, 9. Mother argued that *Tustin* applied to the facts of the case and, thus, Father could not be granted medical decision-making authority. *Sejka* at ¶ 20. Father argued that *Tustin* could be distinguished as the parties in *Tustin* had a hybrid parenting plan; whereas in *Sejka,* Father was only allocated sole authority over medical decisions. *Sejka* at ¶ 21. In agreeing with Father's position, this Court stated:

R.C. 3109.04(A) provides that if one parent is allocated the primary parental rights and responsibilities for the care of a child, that parent is designated the residential parent and legal custodian of the child. *Fisher*[], 116 Ohio St.3d 53, 2007-Ohio-5589, [at] ¶ 22. 'Therefore, the residential parent and legal custodian is the person with the primary allocation of parental rights and responsibilities. When a court designates a residential parent and legal custodian, the court is allocating parental rights and responsibilities.' *Id*. The statute further provides that the court, in a manner consistent with the best interest of the child, shall divide the other rights and responsibilities for the care of the child between the parents. That is what the court did in this case.

(Emphasis omitted.) *Sejka* at ¶ 22.

{¶26} This Court noted that the trial court put limitations on Father's authority, which "restrain[ed] the Father from unilaterally making medical decisions for the child without the Mother's input." *Sejka* at ¶ 23, 28. "Thus, while Father may have [had] exclusive medical decision making authority over the minor child, the court's conditions limit[ed] that authority and g[a]ve Mother broad access to facilitate the child's medical needs." *Id.* at ¶ 28. Given the foregoing, we concluded that "the trial court did not err as a matter of law or abuse its discretion in determining that Father was to have final medical decision-making authority over the minor child." *Id.* at ¶ 29.

{¶27} Accordingly, it is possible for one parent to be the residential parent and legal custodian and for the other parent to have an enumerated area of responsibility with respect to the children without it constituting the hybrid allocation of parental rights and responsibilities that this Court concluded in *Tustin* violated the statute. *See Sejka* at ¶ 21-22; *Tustin* at ¶ 41. As it appears from the judgment entry that the trial court concluded that it was unable to allocate any area of authority to Father after naming Mother the residential parent and legal custodian, we conclude that the trial court erred.

{¶28} This Court takes no position on the allocation of parental rights and responsibilities at this time. We only conclude that some of the trial court's findings with respect to the best interest factors are not supported by the record. The trial court continues to maintain discretion in the allocation of parental rights and responsibilities. *See Kokoski*, 2013-Ohio-3567, at ¶ 26.

{¶29} Father's first two assignments of error are sustained.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT ERRED IN FAILING TO DEAL WITH THE PARTIES' INCOME TAX FILINGS AFTER THE DECREE OF DISSOLUTION, WHICH IT DISMISSED.

{¶30} Father asserts in his third assignment of error that the trial court failed to address the parties' income tax filing statuses for the period of time subsequent to the dissolution in January 2017 up until the new decree of divorce was entered. In his proposed findings of fact, Father sought to have the parties file amended returns for those years to reflect a status of married filing separately due to the vacation of the decree of dissolution. Father also requested that the returns be amended so that each party would claim two children, instead of Mother claiming all four.

{¶31} The trial court did not address this issue in the judgment entry. While the trial court stated that "[a]ny other motions before this Court not specifically addressed are denied[,]" Father's request to order amended tax returns was not part of a motion; instead, it was part of what he sought pursuant to the divorce proceedings. Thus, it appears that the trial court neglected to resolve this issue. As this Court is a reviewing court, we decline to resolve this issue in the first instance. *See, e.g., In re A.S.*, 9th Dist. Summit No. 29472, 2020-Ohio-1356, ¶ 24.

{¶32} Father's third assignment of error is sustained to the extent he has argued the trial court erred in failing to address the issue.

III.

{¶33} Father's assignments of error are sustained to the extent discussed above. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is reversed.

Judgment reversed,
and cause remanded.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

LESLIE S. GRASKE, Attorney at Law, for Appellant.

SILAS M. PISANI, Attorney at Law, for Appellee.