[Cite as *In re G.D-M.*, 2022-Ohio-3023.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: G.D-M.
    D.D-M.
    A.D-M.
    J.D-M.

C.A. Nos.     30069
              30070
              30071
              30072

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.     DN 19-3-195
              DN 19-3-194
              DN 19-3-193
              DN 19-3-192

DECISION AND JOURNAL ENTRY

Dated: August 31, 2022

CARR, Presiding Judge.

{¶1} Appellant, Michael Messenger ("Father"), appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, designating Melissa Donaldson ("Mother") as the residential parent for school purposes. This Court affirms.

I.

{¶2} Mother and Father had four boys together, G.D-M. (DOB 12/4/2010). D.D-M. (DOB 2/14/2013), A.D-M. (DOB 8/6/2014), and J.D-M. (DOB 4/1/2016). Mother and Father were never married.

{¶3} After a domestic violence incident in February 2019 involving Father and D.D-M., Summit County Children Services Board ("CSB") intervened and the children were placed with

their paternal grandparents. Both Mother and Father began a biweekly visitation schedule in June 2020. Mother ultimately filed a motion for legal custody of all the children with standard visitation for Father. Father filed his own motion for legal custody of the children with standard visitation for Mother.

{¶4} The matter proceeded to trial. After the first day of trial, the trial court raised the prospect of the parties revisiting mediation. Both Mother and Father were amenable. The parties ultimately reached a mediated shared parenting agreement regarding all issues except for who would be the residential parent for school enrollment. The trial continued with respect to that issue.[1]

{¶5} On July 27, 2021, the trial court issued a judgment entry with respect to each child adopting the mediated shared parenting agreement as the order of the court. In so doing, the trial court ordered that the children would be placed in the custody of both parents pursuant to the terms of the agreement. With respect to school enrollment, the trial court found that while both parents had fulfilled their case plans and were capable of fulfilling the role, it was in the best interest of the children for Mother to be the residential parent for school purposes.

{¶6} On appeal, Father raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ABUSED ITS DISCRETION AS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT GRANTED MOTHER TO BE THE RESIDENTIAL PARENT FOR SCHOOL PURPOSES[.]

---

[1] Due to mediation, the trial resumed approximately two months after the first day of trial had concluded.

{¶7}    In his sole assignment of error, Father maintains that the trial court's determination that Mother should be the residential parent for the purposes of school enrollment was against the weight of the evidence.  This Court disagrees.

{¶8}    Generally speaking, the primary concern in allocating parental rights and responsibilities is the best interest of the children.  *See Miller v. Miller*, 37 Ohio St.3d 71, 75 (1988).  A trial court enjoys broad discretion in making best interest determinations.  *See Moneypenny v. Moneypenny*, 9th Dist. Medina Nos. 3051-M, 3058-M, 2001 WL 39602, *3 (Jan. 17, 2001).

{¶9}    "In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered.'"  *In re T.K.*, 9th Dist. Summit No. 28720, 2017-Ohio-9135, ¶ 7, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, (9th Dist.2001).  "When weighing the evidence, this Court 'must always be mindful of the presumption in favor of the finder of fact.'"  *In re T.K.* at ¶ 7, quoting *Eastley* at ¶ 21.

{¶10}    In this case, the juvenile court set forth reasons in support of its determination that it was in the children's best interest for Mother to be the residential parent for school purposes.  The juvenile court highlighted that the children were initially removed because of Father's abuse of D.D-M. and that the guardian ad litem ("GAL") believed that it was in the children's best interest for Mother to be the residential parent for school purposes.  The juvenile court found that the children were bonded to each other, both of their parents, as well as extended family on both

sides. The juvenile court outlined the wishes of each child, noting that while D.D-M. and J.D-M.[2] did not have a preference, A.D-M. expressed a clear desire for Mother to be designated the residential parent for school purposes. G.D-M. also expressed a desire for Mother to be the residential parent for school purposes throughout the pendency of the case until the final meeting with the GAL when he reversed his position. Finally, the trial court made a finding with respect to Father's drug use, stating as follows:

> Father has tested positive for marijuana. While Father has a medical marijuana card, the Court finds that he is smoking marijuana as opposed to merely using medical marijuana based upon his positive drug screen for cocaine on a February 10, 2021 swab. If he is using only medical marijuana, this screen would indicate a use of cocaine as opposed to use of marijuana that had been laced. Either circumstance is a concern for the Court.

{¶11} Father raises a manifest weight challenge on appeal. The crux of Father's argument is that the weight of the evidence showed that he was primarily responsible for all of the children's needs, particularly in regard to schooling, and that Mother was largely disinterested in matters regarding the children's education. Father asserts that the juvenile court's determination regarding who should be the residential parent for school purposes resulted from the court placing an unwarranted amount of emphasis on his positive test for cocaine. Father further suggests that the juvenile court's erroneous determination resulted in part from the fact that it disregarded the best interest factors set forth in R.C. 3109.04.

{¶12} The trial in this matter unfolded over the course of two days. Significantly, the parties agreed to mediation at the conclusion of the first day of trial. After the parties reached a mediated shared parenting agreement where they agreed to joint custody with shared parenting time, the trial continued solely on the issue of who would be the residential parent for the purposes

---

[2] The trial court found that J.D-M. was not yet of suitable age to express his wishes as to custody.

of school enrollment. The GAL recommended that Mother be named residential parent for school purposes. The attorney representing G.D-M. and D.D-M advocated for Mother being named the residential parent for school purposes. CSB remained neutral on the issue.

{¶13} As noted above, the children were initially removed from the custody of their parents after a domestic violence incident involving Father and his son, D.D-M. The children had been living with Father for a short time prior to their removal. The CSB caseworker concluded that there were no concerns about the children's safety with respect to either parent.

{¶14} The GAL testified that the nature of her interactions with the parties was somewhat unorthodox in light of the COVID-19 pandemic. The case was opened in March 2019 and the GAL was assigned to the case in December 2019. While the GAL had visited both homes, a number of visits occurred virtually due to the pandemic. During the pendency of the case the GAL observed that both Mother and Father proved capable and that there were no major concerns with either parent. The GAL testified that the children were generally doing well both in and out of school.

{¶15} The GAL expressed some concern that the children may have received coaching on how to answer certain questions. G.D-M., who was entering fifth grade at the time of trial, had been adamant throughout the pendency of the case that he wanted to attend school in Streetsboro and then, just a week prior to trial, he indicated that he wanted to attend school in Tallmadge. With respect to the other children, D.D-M., who was entering third grade, expressed a desire to maintain a good relationship with both Mother and Father and declined to take a position on the school issue. A.D-M., who was entering first grade, conveyed a clear desire for Mother to be the residential parent for school purposes. The GAL did not seek an opinion from J.D-M. because he only had experience with Head Start.

**{¶16}** The GAL recommended that Mother be designated the residential parent for the purposes of school enrollment. This recommendation was predicated on the GAL's belief that Mother was more equipped for the role. While Father was also supportive, he was more reliant on the large amount of support that he received from his family in facilitating the children's schooling.

**{¶17}** Father resides with his parents in a house in Tallmadge.[3] Mother lives in Streetsboro at a house with her mother, her stepfather, and her grandmother. The evidence presented at trial supported the conclusion that both households provided supportive environments for the children in regard to schooling. Father was recently promoted to supervisor at a construction company and he has no issues adjusting his hours to address the children's educational needs. Mother is employed with a food delivery company and she has the flexibility to work more hours during the weeks when the children are with Father. Both Mother and Father indicated that they have health insurance coverage and would be able to add the children if named the residential parent for the purposes of school enrollment.

**{¶18}** Both Mother and Father were screened for drug use pursuant to their case plans. Father tested positive for marijuana or THC on seven occasions from June 2019 to February 2021. On February 10, 2021, Father tested positive for marijuana as well as a low level of cocaine. The toxicologist from Forensic Fluids was unable to decipher whether the positive for cocaine resulted from using marijuana that was laced with cocaine or separate cocaine use. Although Father acknowledged marijuana use, he was adamant that he did not use cocaine. Due to the fact that he had suffered a traumatic brain injury during a car crash earlier in his life, Father was able to obtain a medical marijuana card in late February 2021. Although he tested positive for marijuana or THC on three occasions thereafter, he had listed THC and CBD as medications on those occasions. The

---

[3] Father's girlfriend also recently moved into the house.

toxicologist indicated that the final three tests indicated high levels of THC. The CSB caseworker testified that Father explained that when he used marijuana, he did so later in the evening when the children no longer required his full attention. Mother tested positive for marijuana or THC on one occasion in February 2019. Mother also failed to submit a sample in January 2020, which is considered a positive. All of Mother's remaining screenings were negative.

{¶19} The CSB caseworker testified that both Mother and Father proved capable with respect to school-related matters. Father attended all parent-teacher conferences, routinely assisted the children with their homework, and helped in getting the children to and from school. Mother was not initially involved with the children's schooling during the 2019-2020 school year after the children were first placed with their paternal grandparents. However, Mother became actively engaged with the children's schooling and counseling by Fall of 2020. While Mother initially struggled with the transition to virtual learning during the pandemic, she quickly adapted and the children remained on track with their coursework. Although the children had a positive experience attending Tallmadge schools while staying with their paternal grandparents, the CSB caseworker testified that she did not foresee any issues if the children attended Streetsboro schools in the future.

{¶20} While Mother acknowledged that she had no major concerns with Tallmadge schools, she emphasized that she was better equipped to help the children with schooling. Mother also expressed her view that she was in a better position to take the lead in getting the children to and from school on a daily basis, given that her house was within walking distance of the schools in Streetsboro and she would not have to coordinate rides. Although Mother maintained a personal belief that the children did not need counseling, she testified that she would not override

professional opinions on the issue and that she would take whatever steps were necessary to facilitate counseling sessions for the children.

{¶21} Father explained at trial that when he moved to Tallmadge to live with his parents in May of 2020, it provided him with an opportunity to be more involved with the children's schooling and various appointments, given that the children were attending Tallmadge schools and the counseling sessions were taking place at home. Father testified that he was diligent in helping the children with their school work and that the children were thriving in Tallmadge schools. Father expressed concern that the children's counseling would be disrupted if they attended school in a different county, noting that their current counseling was tied to Summit County and that Mother had expressed skepticism about the need for counseling. Although he had attempted to keep an open line of communication regarding schooling, Father suggested that Mother did not have a strong track record with communicating on school-related matters.

{¶22} A Head Start teacher who worked with J.D-M. explained that Father was very attentive and engaged regarding his son's schooling. Father had developed techniques to address and correct any behavioral issues that arose. The Head Start teacher testified that J.D-M.'s behavior was more erratic during the weeks he was staying with Mother. G-D.M.'s fourth grade teacher testified that she had consistent communication with Father throughout the school year. Father participated in parent-teacher conferences while Mother did not. Mother became more engaged midway through the school year when she began to utilize the ClassDoJo application for parents.

{¶23} At this juncture, we pause to reiterate the limited scope of this appeal. The parties in their merit briefs have discussed a significant amount of evidence that would only be relevant if the custody of the children were in dispute. While custody was in dispute at the time trial

commenced, the parties reached a joint custody agreement after the first day of trial and the only issue that remained to be litigated was who would serve as the residential parent for school purposes. Accordingly, the scope of this appeal is limited a review of the trial court's determination in that regard. Much of the evidence presented below that would have been relevant to a custody determination was in no way pertinent to the issue of who should be designated at the residential parent for school purposes. For example, given that Mother and Father do not dispute that joint custody is in the best interest of the children, Father's prior conviction has no bearing on who should be the residential parent for school purposes. Our manifest weight review is limited to considerations that are relevant to the sole issue of which parent should be designated the residential parent for school purposes.

{¶24} A careful review of the record does not support Father's contention that the juvenile court's order designating Mother as the residential parent for school purposes resulted in a manifest miscarriage of justice. While Father initially showed a higher level of engagement with the children's schooling, that was due in part to the fact that Father was living in Tallmadge where the children were attending school. Mother showed a strong commitment to the children's schooling during the 2020-2021 school year. The GAL was in agreement with Mother's testimony that Mother was better equipped to assist the children with their educational needs and was less dependent on support from extended family. There was no evidence presented regarding concerns with the quality of Streetsboro schools. Furthermore, while Father suggests that the juvenile court placed a disproportionate amount of weight on his one positive test for cocaine, the trial court's finding appeared to be based on a broader concern regarding Father's drug use. Nevertheless, the juvenile court highlighted a number of additional considerations unrelated to drug use in support of its conclusion that it was in the children's best interest that Mother be designated the residential

parent for school purposes. Under these circumstances, we cannot say that this is a case where the trier of fact clearly lost its way. *Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, at ¶ 20, quoting *Tewarson*, 141 Ohio App.3d at 115.

**{¶25}** To the extent that Father contends that the trial court failed to consider the factors set forth in R.C. 3109.04, we remain mindful that Mother and Father entered into a mediated shared parenting agreement where the only remaining contested issue was who would be designated as the residential parent for the purposes of school enrollment. Many of the factors set forth in R.C. 3109.04(F)(1) and (2) were not relevant to that determination. *See* R.C. 3109.04(F)(1) and (2) (requiring the court to consider "all relevant factors[.]"). The trial court made findings regarding the children's bonded relationships with their siblings, parents, and extended family on both sides, as well as the recommendation of the GAL. *See* R.C. 3109.04(F)(1)(c), R.C. 3109.04(F)(2)(e). Father has failed to demonstrate how consideration of any of the other factors would have impacted the best interest determination. *See* App.R. 16(A)(7).

**{¶26}** Father's assignment of error is overruled.

III.

**{¶27}** Father's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division is affirmed.

Judgment affirmed.

―――――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

CALLAHAN, J.
SUTTON, J.
CONCUR.

APPEARANCES:

BRENDON KOHRS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Proseucting Attorney, and HEAVEN ROSE DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

DANIEL R. BACHE, Attorney at Law, for Appellee.

RON GATTS, Attorney at Law, for children.

HOLLY FARRAH, Guardian ad Litem.