[Cite as *In re B.T.-H.*, 2022-Ohio-4139.]

STATE OF OHIO )
)ss:
COUNTY OF WAYNE )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

IN RE: B. T-H.

C.A. No.     21AP0036

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.     2014 JUV-G 000561

DECISION AND JOURNAL ENTRY

Dated: November 21, 2022

TEODOSIO, Presiding Judge.

{¶1}    Appellant, S.P., f.k.a. S.H. ("Mother"), appeals the July 30, 2021, judgment of the Wayne County Court of Common Pleas, Juvenile Division, which overruled her objections to the magistrate's decision naming J.T. ("Father") the sole residential parent of B.T-H. ("the Child"). This Court affirms.

I.

{¶2}    Mother and Father are the biological parents of the Child, born out of wedlock on November 3, 2008.  When their relationship ended, Father moved to Indiana and married the Child's stepmother.  They live with the two children they have together and one child from the stepmother's previous marriage.  Mother remained in Ohio and married the Child's stepfather. They live together with their four children:  two from Mother's previous relationships, one from the stepfather's previous relationship, and the Child.

**{¶3}** An agreed judgment entry was filed on March 19, 2015, which did not specifically grant custody to either Mother or Father or designate either as the residential parent, but instead addressed other matters and set forth parenting time rights for Father. *See Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 31 (stating that the designation of a residential parent or legal custodian must be made in a court's order or decree). Pursuant to R.C. 3109.042(A), because the Child had resided with unmarried Mother since birth, Mother was presumed to be the sole residential parent of the Child by operation of law. The magistrate issued a decision approving the agreed judgment entry, and the trial court issued a judgment entry adopting the magistrate's decision and making the parties' agreed judgment entry an order of the court.

**{¶4}** Father filed a motion to show cause/contempt and a motion for parenting time in July 2019, a motion to show cause in October 2019, and several other motions in January 2020. Meanwhile, Mother filed a motion to show cause in August 2019. The matter was set for final hearings and the Child was interviewed in camera by the trial court in December 2019, but multiple continuances and the worldwide Covid-19 pandemic resulted in significant delays before the hearings were actually held.

**{¶5}** Three hearings were then held in January and February of 2021, in which Mother, Father, their respective spouses, and the guardian ad litem ("GAL") all testified. Many exhibits from both parties, including four reports from the GAL and a report from clinical psychologist Dr. Robin Tener were all admitted into evidence.

**{¶6}** The magistrate issued her findings and decision on March 13, 2021, designating Father as the residential parent of the Child and finding Mother guilty of contempt of court. Two days later, the trial court adopted the magistrate's decision and entered judgment on the matter. Mother filed timely objections and supplemental objections to the magistrate's decision, and

Father responded in opposition. The trial court conducted an independent review of the record and issued a judgment entry on July 30, 2021, overruling Mother's objections, save for certain non-determinative factual findings.

{¶7} Mother now appeals from the trial court's July 30, 2021, judgment and raises two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR ONE**

THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOCATING PARENTAL RIGHTS AND RESPONSIBILITIES TO THE FATHER.

{¶8} In her first assignment of error, Mother argues that the trial court erred when it incorrectly determined what was in the best interest of the Child and allocated parental rights and responsibilities by designating Father as the residential parent of the Child. We disagree.

{¶9} "This Court reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 17. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Id.* at ¶ 18. An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶10} "[C]ustody issues are some of the most difficult and agonizing decisions a trial judge must make." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). A trial court therefore possesses broad discretion with respect to its determination of the allocation of parental rights and responsibilities, and its decision will not be overturned absent an abuse of discretion. *Kokoski v.*

*Kokoski*, 9th Dist. Lorain No. 12CA010202, 2013-Ohio-3567, ¶ 26. "[A] trial court's determination in custody matters 'should be accorded the utmost respect' because '[t]he knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.'" *Armbruster v. Armbruster*, 9th Dist. Lorain No. 19CA011531, 2020-Ohio-3833, ¶ 6, quoting *Baxter v. Baxter*, 9th Dist. Lorain No. 10CA009927, 2011-Ohio-4034, ¶ 6, quoting *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988); *See also Davis* at 418 (recognizing that a witness's demeanor, attitude, and credibility "does not translate well on the written page").

{¶11} "When a court designates a residential parent and legal custodian, the court is allocating parental rights and responsibilities." *Fisher*, 116 Ohio St.3d 53, 2007-Ohio-5589, at ¶ 23. "'When allocating parental rights and responsibilities, the court must take into account the best interest of the child[].'" *Giovanini v. Bailey*, 9th Dist. Summit Nos. 28631 and 28676, 2018-Ohio-369, ¶ 8, quoting *Bentley v. Rojas*, 9th Dist. Lorain No. 10CA009776, 2010-Ohio-6243, ¶ 19, citing R.C. 3109.04(B)(1). In determining the best interest of a child under R.C. 3109.04, whether on an original decree allocating parental rights and responsibilities for the care of the child or a modification of a decree allocating those rights and responsibilities, the trial court is required to consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1). While the trial court need not explicitly reiterate its findings with regard to each best interest factor under R.C. 3109.04(F)(1), it must be apparent from the record that the court considered the factors in its decision. *Herron v. Herron*, 9th Dist. Summit No. 29264, 2019-Ohio-5095, ¶ 8, citing *Matis v. Matis*, 9th Dist. Medina No. 04CA0025-M, 2005-Ohio-72, ¶ 6, and *Phillips v. Phillips*, 9th Dist. Lorain No. 13CA010358, 2014-Ohio-248, ¶ 8.

{¶12}  "[A]s to the trial court's findings with respect to the statutory best interest factors, '[t]his Court has held that what is in the best interest of a child is primarily a question of fact that should be reversed only if it is against the manifest weight of the evidence.'" *Smith v. Smith*, 9th Dist. Summit No. 29754, 2021-Ohio-3016, ¶ 7, quoting *Kokoski* at ¶ 26.  "Manifest weight of the evidence pertains to the burden of persuasion." *In re A.A.*, 9th Dist. Wayne No. 18AP0035, 2019-Ohio-902, ¶ 17.  When reviewing the manifest weight of the evidence in a civil case, we must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Smith* at ¶ 7.  "[T]his Court must affirm individual factual conclusions of the trial court if they are supported by competent, credible evidence." *Id.*  "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978).  In weighing the evidence, we must always be mindful of the presumption in favor of the finder of fact, *Eastley* at ¶ 21, which arises because the trial judge had an opportunity "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal* at 80.  While "[a] finding of an error in law is a legitimate ground for reversal, [] a difference of opinion on credibility of witnesses and evidence is not." *Id.* at 81.  "Only in the exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal, will the

appellate court reverse." *Boreman v. Boreman*, 9th Dist. Wayne No. 01CA0034, 2002-Ohio-2320, ¶ 10.

{¶13} On appeal, Mother challenges the trial court's findings with respect to several best interest factors, including those under R.C. 3109.04(F)(1)(c)-(f) and (i)-(j). In her decision, which was adopted by the trial court, the magistrate explicitly listed and addressed each best interest factor in detail. *Compare Herron v. Herron*, 9th Dist. Summit No. 29683, 2021-Ohio-2223, ¶ 21 ("The trial court's current judgment entry not only states that it considered the statutory factors regarding the best interest of the child, but it also cited the relevant statutory factor and provided a brief statement related to the statutory factor.").

{¶14} Regarding R.C. 3109.04(F)(1)(c) (i.e., the Child's interaction and interrelationship with the Child's parents, siblings, and any other person who may significantly affect the Child's best interest), the magistrate found that the Child had an appropriate and loving relationship with Father, the Child's stepmother, and others on Father's side of the family. Contrarily, while she also found the Child's relationship with Mother to be loving, she found it to be "dysfunctional" based on the evidence presented of role reversal and the Child's mimicking of detrimental coping skills, such as using threats of suicide to address relationship problems. She found that the Child loves his siblings on Mother's side, but that the Child did not have much of a relationship with Mother's extended family, and his relationship with his stepfather "seem[ed] to be overshadowed by Mother[.]" The trial court adopted the magistrate's decision and, in overruling Mother's objections to that decision, explicitly found these findings to be well-established in the record.

{¶15} Mother argues that the evidence demonstrated good relationships and common interests between the Child and the members of Mother's side of the family, yet it revealed the Child's fear of his stepmother because he saw her yell at the children and smack his stepbrother's

face. She also references an allegation that the Child was inappropriately touched by one of his stepsiblings on Father's side of the family, but she concedes that the allegation was "unsubstantiated."

{¶16} As for R.C. 3109.04(F)(1)(d) (i.e., the Child's adjustment to the Child's home, school, and community), the magistrate found that Mother changed residences an "unclear" number of times and changed the Child's school district four times in seven school years (kindergarten through sixth grade) despite residing in the same geographic area. She found the Child to be social and well-adjusted to both families and communities, and fully capable of living in either community. She further found that the Child had friends in both communities and that sports were available to him in both communities, while recognizing the limitations and restrictions imposed on such activities due to the Covid-19 pandemic. The trial court found these findings to be well-established in the record.

{¶17} Mother admits that the Child changed from private schooling to homeschooling to public schooling, but contends that the Child adjusted well to the changes and is involved in sports, clubs, and church. She asserts that the Child is "better adjusted" in her home because, unlike at Father's home, the Child has his own room, is walked to the bus stop every morning, and is not forced to wake up at 4:00 A.M. to be transported to childcare before school.

{¶18} When considering R.C. 3109.04(F)(1)(e) (i.e., the mental and physical health of all persons involved in the situation), the magistrate found that Father, the Child's stepmother, and their children did not have any reported physical or mental health issues, while Mother has "significant mental health issues that require intensive and lengthy therapy, counseling, and medications[,] which have gone untreated." The magistrate noted that the details of Mother's mental health issues were interwoven throughout her 48-page decision, but she found that Mother

had attempted suicide and experienced suicide ideation resulting in hospitalizations. The magistrate further found that Mother had enmeshed the Child into her own adult life, creating an "unhealthy[,] dysfunctional relationship that is harmful to the [C]hild." The trial court found the magistrate's findings to be well-established in the record.

{¶19} Mother argues that, despite Father's denial at the hearing, Dr. Tener's report indicated that Father admitted to leaving the Child under the supervision of his bedridden father-in-law. Mother also claims to have been consistently engaged in counseling for her borderline personality disorder ("BPD") diagnosis since 2006. She admits that she was not engaged in Dialectical Behavior Therapy ("DBT") despite Dr. Tener's recommendation, but she claims to have since taken active steps to set up intake appointments to start DBT. She further claims to have maintained her counseling and DBT appointments since the hearing in this matter. She acknowledges the validity of the court's concerns regarding enmeshment and her mental health issues, but then minimizes their effect by claiming the Child is "very sensitive" to Mother's feelings and moods, is "doing well in school," is "engaged in activities," and is "a thoughtful and young man."

{¶20} As for R.C. 3109.04(F)(1)(f) (i.e., the parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights), the magistrate found Father to be compliant with court orders, even when he is frustrated. Contrarily, she found Mother to be repeatedly non-compliant with court orders and likely non-compliant with any future orders issued by the court. The trial court found these findings to be well-established in the record.

{¶21} Mother contends that she only denied Father's parenting time with the Child on two occasions. First, she admits to not providing Father parenting time on July 11, 2019, because of her unallayed concern that the Child would be supervised by Father's bedridden father-in-law.

Second, Mother contends that the Child did not want to visit with Father on September 13, 2019, which resulted in a "regrettable and emotional" incident in which the parties remained in a McDonald's parking lot for 45-60 minutes while the Child read Father a letter about his feelings (which Mother claims was written at the Child's counselor's request, not at Mother's request).

**{¶22}** While the magistrate did not find the R.C. 3109.04(F)(1)(i) factor (i.e., whether the residential parent has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court) to be applicable in this case, the trial court disagreed with the magistrate and found that this factor weighed against an award of custody to Mother. The court found that while Mother was the Child's residential parent by operation of law, she willfully and repeatedly denied Father parenting time despite the court's order.

**{¶23}** Mother rejects the finding that she willfully and repeatedly denied Father parenting time with the Child. She argues that the two isolated incidents in 2019 were the only times she denied Father his parenting time. She contends that she has otherwise always been prompt and timely for parenting exchanges, and therefore argues that this factor weighed in her favor.

**{¶24}** The magistrate found the factor under R.C. 3109.04(F)(1)(j) (i.e., whether either parent has established a residence, or is planning to establish a residence, outside this state) to be inapplicable, but the trial court again disagreed and found that Father had established a residence outside the state of Ohio, which the court found to weigh neither favorably nor unfavorably to Mother or Father. The magistrate did, however, afford considerable weight to the fact that the Child has resided with Mother since birth, and the trial court agreed.

**{¶25}** Mother simply reiterates that the Child has lived with her in Ohio for his entire life, he has family living nearby, and is involved in sports, groups, and school in Ohio. She argues that

the Child does not have these connections in Indiana, and thus claims that this factor weighs in her favor.

{¶26} Mother further argues that some additional best interest factors listed under R.C. 3109.04(F)(2) weighed in her favor, specifically:

> (b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
>
> (c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;
>
> (e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

We note, however, that the best interest factors under R.C. 3109.04(F)(2) are triggered when, unlike here, a request for shared parenting has been made. *See Maran v. Clark*, 9th Dist. Lorain No. 21CA011796, 2022-Ohio-3175, ¶ 32. A request for shared parenting has not been made in this matter, and Mother has not explained how consideration of any of these additional factors would have impacted the trial court's best interest determination. *See In re G.D-M.*, 9th Dist. Summit Nos. 30069, 30070, 30071, and 30072, 2022-Ohio-3023, ¶ 25, citing App.R. 16(A)(7).

{¶27} The trial court found that "the totality of the analysis supports a finding that the [C]hild's best interest would best be served by an award of custody to Father." Though Mother strongly disagrees with the trial court's determinations in this matter, the crux of her argument on appeal is that the weight of the evidence demonstrated that it was in the best interest of the Child for Mother, not Father, to be named the residential parent of the Child. She believes the trial court should have weighed select evidence (which was favorable to her) more heavily while she either ignores or attempts to minimize the evidence that weighed in Father's favor. *Compare King v. King*, 9th Dist. Medina Nos. 11CA0006-M, 11CA0023-M, and 11CA0069-M, 2012-Ohio-5219, ¶ 21. As a reviewing court, however, we must again stress that the trial court, as finder of fact, is

best able to "view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal*, 10 Ohio St.3d 77, 80. The decision to credit the testimony of witnesses who testified contrary to Mother or presented evidence favorable to Father was a determination inherent in the responsibilities of the trial court in this matter. *See Phillips v. Phillips*, 9th Dist. Lorain No. 13CA010358, 2014-Ohio-248, ¶ 13.

**{¶28}** Our thorough review of the record reveals that the trial court's findings regarding the best interest of the Child in this matter are supported in the record by competent, credible evidence. *See Smith*, 2021-Ohio-3016, at ¶ 7. Evidence was presented that Mother suffers from significant and sometimes untreated mental health issues. Apart from attending sporadic counseling, there was evidence that Mother had not taken the recommended steps to obtain help or treatment for her mental health issues. As noted by the trial court, Mother received treatment and therapy only intermittently, and generally only following crises, suicide ideations, and hospitalizations. Her disagreements with other adults (e.g., Father, the parents of other school children, and counselors) led to less interaction with Father and to the Child's removal from both school and counseling. Despite Mother's denials, evidence was presented that both Mother and the Child were exposed to and traumatized by domestic violence by the fathers of Mother's other children, and that any loud noises and people yelling now frighten the Child. Evidence was also presented that court-ordered counseling was helpful to the Child, and both Father and the Child's stepmother testified that they were committed to continuing the Child's counseling in Indiana.

**{¶29}** Evidence was presented that Mother does not follow court orders and has engaged in what could certainly be described as a "systematic interference" in Father's relationship with the Child over an extended period of time. Evidence was presented of Mother, among other things,

hindering or blocking the Child's ability to continue playing video games remotely online with Father, not providing the Child's sports schedules to Father, scheduling events during Father's parenting time, denying Father his parenting time, prompting the Child to write a "feelings" letter and then read it aloud in front of his parents and stepparents, hindering or denying the Child's telephone contact with Father (despite a court order), falsely claiming the Child had games and practices to explain missed visitations with Father, removing Father's surname from the Child's hyphenated surname for no reason except to possibly denigrate Father and minimize his role in the Child's life. Contrarily, no evidence was presented to suggest that Father has significant and untreated mental health issues, or that he has ever interfered with Mother's relationship with the Child. While the evidence showed that the Child loves both of his biological parents and that his parents love him, there was also evidence that the Child was, at times, seemingly parenting Mother (not the other way around) and was being made by Mother to choose between loving either Mother or Father (but not both).

{¶30} The magistrate, and ultimately the trial court, both set forth very careful and measured analyses in consideration of the evidence presented and the best interest factors in this case. There can be no doubt that the trial court conducted a thorough, independent review of the entire record before overruling Mother's objections to the magistrate's decision, as evinced by its 24-page judgment entry which at times even disagreed with certain findings made by the magistrate. The painstaking detail in which the court poured over the evidence and made its determinations indicates that sincere thought and consideration was given to the best interest factors in this case.

{¶31} Our thorough review of the record before us reveals competent, credible evidence supporting the trial court's determination regarding the best interest of the Child. While evidence

was certainly introduced that could be weighed in favor of designating Mother as the residential parent of the Child, the record is replete with evidence that could be weighed in favor of designating Father as the residential parent. Accordingly, we cannot say that the trial court abused its discretion in this matter or that its determination regarding the best interest of the Child was against the manifest weight of the evidence. Mother has also not shown this to be the exceptional case where the evidence presented weighs heavily in her favor. *See Boreman* at ¶ 10.

**{¶32}** Mother's first assignment of error is overruled.

### ASSIGNMENT OF ERROR TWO

THE TRIAL COURT ABUSED ITS DISCRETION IN HOLDING [MOTHER] IN CONTEMPT OF COURT.

**{¶33}** In her second assignment of error, Mother argues that the trial court abused its discretion when it found her in contempt of court for failing to abide by visitation orders.

**{¶34}** Pursuant to Civ.R. 53(D)(3)(b)(iv): "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Civ.R. 53(D)(3)(b)(ii) further requires objections to magistrate's decisions to state with particularity all grounds for objection. *Haddox v. Haddox*, 9th Dist. Summit Nos. 29582 and 29588, 2020-Ohio-4673, ¶ 9. "'Where a party fails to raise an issue in its objections to a magistrate's decision, that issue is forfeited on appeal.'" *Herron v. Herron*, 9th Dist. Summit No. 29683, 2021-Ohio-2223, ¶ 15, quoting *Bass-Fineberg Leasing, Inc. v. Modern Auto Sales, Inc.*, 9th Dist. Medina No. 13CA0098-M, 2015-Ohio-46, ¶ 24.

**{¶35}** While Mother raised many objections to the magistrate's decision in this matter, none of them challenged the magistrate's contempt findings as they related to the denial of

parenting time on July 11, 2019. The trial court also explicitly noted that Mother "does not dispute [the] findings of contempt." Thus, upon review, we conclude that Mother has failed to preserve this issue and has therefore forfeited all but plain error on appeal. *See Haddox* at ¶ 11. She has not argued plain error on appeal, and this Court declines to construct such an argument on her behalf. *See id.*

{¶36} In her 25-page supplemental objections to the magistrate's decision, Mother only referenced the issue of contempt as it related to the September 13, 2019, incident by summarizing the evidence as showing that she arrived at the exchange location with the Child, she did not interfere, and that Father left without the Child. She stated: "[T]he [m]agistrate's finding of [c]ontempt for the [m]otion to [s]how [c]ause on October 25, 2019[,] was an abuse of discretion" and "Mother abided by the court order and should not have been held in contempt * * *." Presuming this was sufficient to preserve her challenge to the finding of contempt on appeal, we again note that Mother did not actually challenge any of the trial court's findings related to contempt.

{¶37} Furthermore, we must note that, in her supplemental objections, Mother only asserted that the magistrate's contempt finding "was an abuse of discretion." In accordance with Civ.R. 53(D)(4)(d), however, when ruling on objections to a magistrate's decision trial courts are required to "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Yet, the abuse of discretion standard embodies presumptions of validity and deference to an independent fact-finder, which is inappropriate in a trial court's independent review of a magistrate's decision under Civ.R. 53. *See Kovacs v. Kovacs*, 6th Dist. Erie No. E-03-051, 2004-Ohio-2777, ¶ 7. It would have therefore been reversible error for the trial court in this matter to utilize the *appellate*

standard of review of abuse of discretion when ruling on Mother's objections to the magistrate's decision. *See Weber v. Devanney*, 9th Dist. Summit Nos. 28876 and 28938, 2018-Ohio-4012, ¶ 21. *See also Sheehan v. Sheehan*, 3d Dist. Defiance No. 4-19-25, 2020-Ohio-5300, ¶ 12; *Calhoun v. Calhoun*, 7th Dist. Jefferson No. 20 JE 0014, 2021-Ohio-4551, ¶ 14-15; *In re M.R.*, 12th Dist. Butler Nos. CA2018-07-145, CA2018-07-146, and CA2018-07-147, 2018-Ohio-5047, ¶ 17. Accordingly, we cannot say that the trial court erred in neglecting to find, as Mother requested, that the magistrate abused her discretion in finding Mother to be in contempt for the September 13th incident.

{¶38} For the above reasons, Mother's second assignment of error is overruled.

III.

{¶39} Mother's first and second assignments of error are both overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, J.
SUTTON, J.
CONCUR.

APPEARANCES:

BENJAMIN R. SORBER, Attorney at Law, for Appellant.

CHRISTOPHER A. SCHMITT, Attorney at Law, for Appellee.