**[Cite as *Garcia v. Matheson*, 2026-Ohio-516.]**

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

JENNIFER GARCIA

    Appellant

    v.

JAMES K. MATHESON, D.O., et al.

    Appellees

C.A. No.     25CA012201

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    21-CV-202837

DECISION AND JOURNAL ENTRY

Dated: February 17, 2026

SUTTON, Judge.

{¶1}    Plaintiff-Appellant, Jennifer Garcia, appeals from the judgment of the Lorain County Court of Common Pleas. This Court affirms.

## I.

## **Relevant Background**

{¶2}    This appeal arises from a complaint and amended complaint filed by Mrs. Garcia against James K. Matheson, D.O., Mercy Health - Regional Medical Center, LLC, individually and doing business as Mercy Health - Lorain Hospital, Mercy Health Physicians Lorain, LLC, Bon Secours Mercy Health, Inc., and Mercy Health Physicians Lorain Specialty Care, LLC (collectively known as "Defendants"). The amended complaint also named individuals who were dismissed from this matter prior to trial. In the amended complaint, Mrs. Garcia alleged: (1) medical negligence; (2) lack of informed consent; (3) battery/lack of consent; (4) negligence, medical

malpractice, respondeat superior, agency; and (5) negligent entrustment, retention, and supervision. All counts related to a surgery performed by Dr. Matheson on Mrs. Garcia in February of 2020.

{¶3}    During surgery to perform a total abdominal hysterectomy, a Burch colposuspension, and cystoscopy, Dr. Matheson also removed Mrs. Garcia's remaining ovary after seeing that it was fully encompassed by a cyst and adhered to other parts of Mrs. Garcia's body. Dr. Matheson testified he was aware Mrs. Garcia wanted to keep her ovary and did not expect to find Mrs. Garcia's ovary in that condition with such a large cyst. In order to send the tissue to pathology to test for malignancy, Dr. Matheson had to remove the entire ovary to avoid the risk of puncturing the cyst itself, which could cause hemorrhaging and other issues. Mrs. Garcia, however, claimed she desired to keep her left ovary, regardless of whether it was cancerous, in order to avoid medically induced menopause. Mrs. Garcia also claimed Dr. Matheson promised not to remove her ovary, which Dr. Matheson denied. In spite of these claims, Mrs. Garcia signed an operative consent form which stated in relevant part:

> During the procedure my doctor or [licensed independent practitioner] may unexpectedly find it would be in my best interest to do other procedures in addition to what was planned. If they believe this is necessary, I give consent for these procedures.

{¶4}    Prior to trial, the court granted Defendants' motion for a directed verdict on the count for negligent entrustment, retention, and supervision. A jury trial ensued regarding Mrs. Garcia's remaining counts against Defendants. The jury returned a verdict in favor of Defendants. Mrs. Garcia filed a motion for a new trial based upon the exclusion of a witness and certain medical records which was subsequently denied.

{¶5}    Mrs. Garcia now appeals raising two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

**THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶6} In her first assignment of error, Mrs. Garcia argues the jury's verdict was against the manifest weight of the evidence. Specifically, Mrs. Garcia argues "[t]he jury lost its way when it found that Dr. Matheson was not medically negligent because it is undisputed that the operative consent form did not include oophorectomy [or removal of ovary] as a procedure to be performed."

{¶7} "In general, a cause of action for negligence requires proof of (1) a duty requiring the defendant to conform to a certain standard of conduct, (2) breach of that duty, (3) a causal connection between the breach and injury, and (4) damages." *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 2015-Ohio-229, ¶ 23. "The elements are the same for medical negligence." *Id*.

{¶8} When the weight of the evidence is challenged in a civil case, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Bracketed text in original.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist. 2001). In *Eastley* at ¶ 12, the Supreme Court of Ohio explained:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."

(Emphasis deleted.) Further, in weighing the evidence, an appellate court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21. "Only in the exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal, will the appellate court reverse." *In re B. T-H.*, 2022-Ohio-4139, ¶ 12 (9th Dist.), quoting *Boreman v. Boreman*, 2002-Ohio-2320, ¶ 10 (9th Dist.).

{¶9} Here, the jury heard testimony, during direct examination and cross-examination, from Mrs. Garcia and Dr. Matheson, as well as expert witnesses for each party. The jury also received all admitted exhibits, including the operative consent form signed by Mrs. Garcia.

{¶10} Mrs. Garcia testified, prior to surgery, she and Dr. Matheson discussed alternatives to surgery, such as an oblation. Further, Mrs. Garcia and Dr. Matheson discussed risks and benefits of the alternative procedures. Mrs. Garcia chose to have a total abdominal hysterectomy, Burch colposuspension, and cystoscopy, as indicated on the operative consent form. During cross-examination, Mrs. Garcia admitted to reading and signing the operative consent form, which also stated:

> During the procedure my doctor or [licensed independent practitioner] may unexpectedly find it would be in my best interest to do other procedures in addition to what was planned. If they believe this is necessary, I give consent for these procedures.

Mrs. Garcia agreed it was "unexpected" for Dr. Matheson to have to remove her left ovary because she and Dr. Matheson "talked about that [removing the ovary] wouldn't happen." Further, Mrs. Garcia admitted she could have written the word "ovary" on the section of the operative consent form that stated, "I consent to all of the above with the exception of _____." Instead, Mrs. Garcia marked the box that indicated, "I consent to all of the above, with no exceptions."

{¶11} Dr. Matheson testified he told Mrs. Garcia in numerous conversations that he would do everything to keep her ovary, but it might not be possible. Dr. Matheson indicated he did

not put "possible oophorectomy" on the operative consent form because he did not plan to remove the ovary. Additionally, Dr. Matheson testified he "[c]ould never promise or guarantee a result, because [] we don't know what we're going to find when we go into the belly." Further, Dr. Matheson testified: "[w]ell, the goal was to leave the ovary. But the unexpected findings at the time of the surgery changed the plan." Dr. Matheson explained he knew there was a cyst on the left ovary, but he did not "expect it to be as large and abnormal as it was." Indeed, Dr. Matheson described the cyst as being larger than a tennis ball and stuck to the side of the uterus and to the pelvic side wall. Dr. Matheson also stated he did not expect Mrs. Garcia's pelvic adhesions to be "as severe as they were." Dr. Matheson testified he "would never take out an ovary that [] didn't need to come out[,]" but Mrs. Garcia's "whole ovary is this cyst[.]" Dr. Matheson testified there was no safe way to separate the ovary and cyst in order to remove the cyst and send its tissue for a biopsy without the risk of bleeding or other complications.

{¶12} Charles Ascher-Walsh, M.D., the senior vice chair at Mount Sinai Health System who is board certified in obstetrics, gynecology, and urogynecology, testified as an expert on behalf of Dr. Matheson. Dr. Ascher-Walsh testified, in his opinion, to a reasonable degree of medical certainty, Dr. Matheson met the standard of care in his treatment of Mrs. Garcia, including in the consent process. Dr. Ascher-Miller agreed that, based upon Mrs. Garcia's medical records, it would have been unexpected for Dr. Matheson to find a cyst of that size on Mrs. Garcia's left ovary during the surgery.

{¶13} Steven McCarus, M.D., an obstetrician gynecologist who is the chief of gynecological surgery at AdventHealth Winter Park Hospital, testified as an expert on behalf of Mrs. Garcia. Dr. McCarus testified on cross-examination that Mrs. Garcia's ovary needed to come out, Dr. Matheson took good care of Mrs. Garcia, surgery was appropriate to address Mrs. Garcia's

symptoms, Dr. Matheson provided Mrs. Garcia with alternatives to surgery, Mrs. Garcia was provided with the risks of surgery, and the type of cyst Mrs. Garcia had on her ovary does not go away on its own and can turn into cancer. Specifically, Dr. McCarus testified:

Q: So you're aware that the consent form that was signed in this case doesn't have that language of possible oophorectomy in there, correct?

A: Yes, ma'am.

Q: And you don't-- you don't disagree that the ovary needed to come out, right?

A: Correct.

Q: You believe Dr. Matheson took good care of this patient, correct?

A: I do.

Q: This surgery was absolutely indicated, right?

A: It was.

Q: He did provide her with alternatives and risks to the surgery as well, correct?

A: He did.

. . .

Q: Okay. And Mrs. Garcia testified yesterday that she could have written the word "ovary" in that space [on the consent form] and did not. You don't have any reason to disagree with her, do you?

A: No, ma'am.

. . .

Q: In Dr. Matheson's operative report, he put in his operative report and dictated it while he was still in the OR, that the plan was to retain the ovary, if it is normal, right?

A: That's what he dictated.

. . .

Q: A serious cystadenoma is a tumor, but it's a benign tumor, right?

A: Correct.

Q: It's persistent, typically, right?

A: Yes, ma'am.

Q: They don't just go away, right?

A: They don't.

Q: They can turn into cancer, correct?

A: They can.

Q: And obviously that's always the hope that it doesn't, correct?

A; Correct.

{¶14} Prior to deliberations, we note, the trial court instructed the jury in relevant part:

You are not required to believe the testimony of any witness simply because he or she was under oath. You may believe or disbelieve all or any part of the testimony or any witness. It's your providence to determine what testimony to believe and what testimony not to believe.

{¶15} Based upon a thorough review of the record, we conclude this is not the exceptional case in which the trier of fact clearly lost its way and committed a manifest injustice by returning a verdict in favor of Dr. Matheson.

{¶16} Accordingly, Mrs. Garcia's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ABUSED ITS DISCRETION BY EXCLUDING DR. GITIFOROOZ FROM TRIAL AND DENYING [MRS. GARCIA'S] MOTION FOR A NEW TRIAL ON THE SAME GROUNDS.**

{¶17} "The decision to admit or exclude evidence lies in the sound discretion of the trial court." *State v. Campbell*, 2021-Ohio-2050, ¶ 6 (9th Dist.), citing *State v. Sage*, 31 Ohio St.3d 173, 180 (1987). Accordingly, "[w]e review a trial court's decision regarding the admission or exclusion of evidence for an abuse of discretion." *Campbell* at ¶ 6, quoting *State v. Powell*, 2017-Ohio-4030, ¶ 16 (9th Dist.). An abuse of discretion indicates that the trial court's attitude was unreasonable,

arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). Further, pursuant to Evid.R. 103:

> (A) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and
>
> (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or
>
> (2) Offer of Proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. Offer of proof is not necessary if evidence is excluded during cross-examination.
>
> Once the court rules definitely on the record, either before or at trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal.

Thus, "[e]ven in the event of an abuse of discretion, a judgment will not be disturbed unless the abuse affected the substantial rights of the adverse party or is inconsistent with substantial justice." *Ellis v. Fortner*, 2021-Ohio-1049, ¶ 37 (9th Dist.), quoting *Beard v. Meridia Huron Hosp.*, 2005-Ohio-4787, ¶ 20. "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . .[.]" Evid.R. 103(A).

{¶18}    Here, the record indicates Mrs. Garcia planned to call one of her current treating physicians, Habibeh Gitiforooz, M.D., as an expert witness at trial.  Mrs. Garcia, however, failed to update discovery and disclose to Defendants, in a timely manner, that she reengaged treatment with Dr. Gitiforooz in March 2024, after stopping treatment in 2022.  Further, Mrs. Garcia did not disclose Dr. Gitiforooz as an expert witness nor did Dr. Gitiforooz provide an expert report. Although Mrs. Garcia provided Defendants with medical records from her prior treatment with Dr. Gitiforooz in 2021-2022, Mrs. Garcia did not inform Defendants when she started seeing Dr.

Gitiforooz again in 2024, did not provide Defendants with the most recent medical records until 7 days prior to trial, and did not provide Defendants with the most recent billing records until 4 days prior to trial.

{¶19}    Defendants filed a motion *in limine* to exclude Dr. Gitiforooz as a witness at trial and to exclude the medical records and billing records related to Dr. Gitiforooz's treatment of Mrs. Garcia.  Prior to trial, the court addressed Defendants' motion on the record where both parties had an opportunity to argue regarding whether Dr. Gitiforooz should be excluded as a witness.  Mrs. Garcia's counsel indicated that, if allowed, Dr. Gitiforooz would testify about Mrs. Garcia's more recent pellet treatment for menopausal symptoms and its out-of-pocket cost to Mrs. Garcia.  Mrs. Garcia's counsel further stated, "what's really important is what [Mrs. Garcia is] paying for this treatment."

{¶20}    In resolving the Defendants' motion regarding the exclusion of Dr. Gitiforooz, the trial court determined Mrs. Garcia could testify regarding her current treatment with Dr. Gitiforooz and the billing records showing the cost to Mrs. Garcia would be allowed.  However, Dr. Gitiforooz would be excluded as a witness and the medical records from Mrs. Garcia's most recent treatment with Dr. Gitiforooz would also be excluded.

{¶21}    Based upon this record, and specifically because Mrs. Garcia was allowed to testify regarding her current treatment plan with Dr. Gitiforooz and the trial court allowed the medical bills illustrating the cost of those treatments to Mrs. Garcia, we cannot say the trial court abused its discretion in excluding Dr. Gitiforooz and Mrs. Garcia's medical records.  Importantly, Mrs. Garcia's counsel expressed on the record that the importance of this testimony and evidence focused on the cost of these treatments to Mrs. Garcia.  The trial court allowed testimony in this regard and did not exclude the medical bills illustrating the cost of treatment.  Moreover, even if an error

occurred, Mrs. Garcia has not shown that her substantial rights were affected by this decision because Dr. Gitiforooz's testimony was relevant to damages, an issue the jury never reached. Therefore, the trial court did not err in its evidentiary ruling or in denying Mrs. Garcia's motion for a new trial.

**{¶22}** Accordingly, Mrs. Garcia's second assignment of error is overruled.

III.

**{¶23}** Mrs. Garcia's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETTY SUTTON
FOR THE COURT

CARR, P. J.
CONCURS.

HENSAL, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

RYAN M. GEMBALA, Attorney at Law, for Appellant.

ERIN SIEBENHAR HESS and BRIANNA MARIE PRISLIPSKY, Attorneys at Law, for Appellees.